TASCO *v.* STATE

CURRY *v.* STATE

[No. 46, September Term, 1960.]

504

*Decided November 21, 1960.*

*Dissenting opinion filed November 29, 1960.*

*Motion for rehearing and for appointment of counsel to assist in preparation thereof filed by Tasco December 19, 1960, denied January 18, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Charles Cahn, II*, with whom was *Martin B. Greenfeld* on the brief for Bob Curry, for the appellants.

*James H. Norris, Jr., Special Assistant Attorney General*, with whom were *C. Ferdinand Sybert, Attorney General, Saul A. Harris, State's Attorney for Baltimore City*, and *Dene Lusby, Assistant State's Attorney*, on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal by Charles H. Tasco and Bob Curry from the judgments and sentences respectively entered against each of them as a result of their convictions by a judge of the Criminal Court of Baltimore, sitting without a jury, of statutory burglary. After their convictions the Supreme Bench of Baltimore City, who pass upon the weight as well as the sufficiency of the evidence, *Auchincloss v. State*, 200 Md. 310, 89 A. 2d 605, denied their motions for new trials.

In order to evaluate properly the evidence adduced by the State and the proper and permissible inferences therefrom, it is necessary to have the scene of the crime clearly in mind, as it, when considered with the other evidence, discloses, with clarity and precision, just what happened, in the early morning hours of October 25, 1959, in the rear of the burglarized premises. The reporter will, therefore, be requested to insert a sketch (the appellants') of the locality.

Row Houses.

Row Houses Facing Both Streets

At about 1:24 A. M. on October 25, 1959, Officer Catania was operating a police patrol car in the vicinity of Bruce and Baker Streets, and Officers Anderson and Webster were operating Radio Car 74 somewhere in the general locality. Officers Anderson and Webster received a call to go to Baker and Bruce Streets (the location of the Baltimore Food Market, the burglarized store) "to investigate someone *in* the store at that location." (Emphasis supplied.) They proceeded to

answer the call, intending to go north on Mount Street, then west on Baker Street to their destination. While they were proceeding north on Mount Street, Officer Catania turned into Bruce Street from Baker Street. (This last statement is not only a permissible inference for the trial judge to have drawn, but the only proper one; as we shall see in just a moment that the defendants, when first seen by Officer Catania from the intersection of Baker and Bruce Streets, were only five feet from the safe, and, when first observed by Officers Anderson and Webster from the intersection of Mount Street and the alley, they were twenty to thirty feet therefrom.) Officer Catania, when he turned into Bruce Street, saw "about three subjects," within five feet of the stolen safe, who immediately started to run; in other words, he "flushed the covey." At just about this time, Officers Anderson and Webster, who had been proceeding north on Mount Street, arrived at its intersection with the alley. They immediately observed three men, twenty to thirty feet from the safe, running east on the alley towards them. One who turned out to be the appellant Curry ran past Officer Webster in the alley and turned south on Mount Street, where he was apprehended by Officer Anderson, within the block. In the meantime, Officer Catania proceeded the short distance down to the vacant lot, where he left his car and joined in the chase. Within a few moments, he and Officers Webster and Anderson apprehended the other appellant, Tasco, and a codefendant, one Brewer (who was also convicted, but did not appeal), in the rear yards of the row houses on Baker Street, shown on the sketch. One man escaped. While Officer Catania testified that he could not specifically identify the three men who were apprehended, as the same subjects that he had first seen when he turned into Bruce Street, any proper evaluation of the above testimony (and that to be mentioned later) leaves little, if any, doubt that they were.

Further investigation showed a Chevrolet panel truck, which had been stolen, at the approximate location shown on the sketch, with a safe leaning against its rear; and a four-wheel hand-cart standing nearby. The cart and the safe were identified by the manager of the burglarized store.

The three suspects were taken to the Western District station and there interrogated. Brewer was first confronted with appellant Robert Curry. Brewer looked at Curry and said he knew him as Robert Carey. Curry stated he did not know Brewer as Nathan Brewer. Brewer said he saw Curry standing about three or four feet from the safe, but he was not pushing it. Curry stated he had heard "what Nathan Brewer signed," and denied being near the safe, but stated that he saw Brewer at a "crap" game in the rear of the row houses on Baker Street.

When Brewer and appellant Tasco were confronted with each other, Brewer stated that he did not know Tasco by name, but had seen him before and he saw Tasco standing in the alley, in the rear of the Food Market, but did not see him touch the safe. Tasco denied seeing Brewer at anytime until after he was arrested, and also denied pushing the safe, claiming he was just "walking through the alley."

Further testimony established that the manager of the store had closed it at about 10:00 P.M. At about 1:30 A.M. he received a telephone call that someone had broken into the store, and he went directly there. Upon his arrival, he found a hole in the roof and the locks broken on the rear doors. A safe, a hand-cart and two bags of pennies were missing from the store; and a quantity of cigarettes had been moved from the front of the store to its rear. The safe measured about eighteen inches across the top, stood about thirty inches high and the witness thought it weighed about 1300 pounds. The safe that was leaning against the stolen truck in the rear and the hand-cart belonged to the owner of the store. The bags of pennies were never recovered and no finger-prints were obtainable; however, at least one man escaped and a pair of black leather gloves were found on Tasco.

The function of this Court, when it reviews a criminal case that has been tried by the court, sitting without a jury, was succinctly stated in *Cooper v. State*, 220 Md. 183, 152 A. 2d 120, to be as follows: "The question is not whether we *might* have reached a different conclusion from that of the trial court, but whether the trial court had before it sufficient evidence upon which it could fairly be convinced beyond a rea-

sonable doubt of the defendant's guilt of the offense charged; and the verdict of the trial court is not to be set aside on the evidence unless clearly erroneous." The evidence must, therefore, be examined with this standard in mind, if we are not to do violence to our previous decisions.

Of course, it is elementary that the mere presence of a person at the scene of a crime is not, *of itself,* sufficient to establish that that person was either a principal or an accessory to the crime. *Watson v. State,* 208 Md. 210, 117 A. 2d 549; *Judy v. State,* 218 Md. 168, 146 A. 2d 29. But presence at the immediate and exact spot where a crime is in the process of being committed is a very important factor to be considered in determining guilt; and in this case the trial court was not required to believe that the appellants were mere observers of a crime that was being committed, nor that it is a case where a crime had been committed one hour, one day or one week before, and the defendants happened, by chance, to come to the place where the crime had been committed. Here we have a situation which permitted the trial court to draw a rational inference that the offenders were interrupted during the actual asportation of the potential fruits of the crime.

At about 1:24 A. M., on a day late in October, an unusual hour for ordinary youths to be prowling in alleys, but not at all unusual for burglars to ply their nefarious desires for loot, the officers received a call "to investigate someone *in* the store." Within a matter of minutes, two patrol cars arrived, almost simultaneously, at the scene of the crime; one at the intersection of Mount Street with the alley; the other at the intersection of Baker and Bruce Streets. When first seen by Officer Catania, the appellants were about five feet from the safe (Brewer also said he saw Curry within three or four feet thereof). They immediately fled. Flight, *alone,* is, of course, not controlling; but it, also, is a factor that may be considered in determining guilt. *Clay v. State,* 211 Md. 577, 584, 128 A. 2d 634. The appellants, not realizing that the other officers had arrived at the intersection of Mount Street and the alley, ran to the east and one (Curry) ran past Officer Webster, but was apprehended in less than a block's distance by Officer Anderson. The other appellant and one of the appellants' co-

partners in the commission of the burglary evidently realized they were boxed-in by the police; hence they attempted to hide in the rear yards on the northern side of the alley, but were apprehended within a few minutes. One of the subjects escaped through a small opening of some kind. Within a few feet from where they were apprehended and at the location from whence they had run, was a stolen Chevrolet truck with the safe *leaning* against it; and the hand-cart was nearby. The fact that the safe was leaning against the truck (and not in it) and the fact that the cigarettes, which had been moved from the front of the store to its rear, were still in the store, when coupled with the additional fact that the police had been notified just a few minutes before that someone was *in* the store, constitute sufficient evidence to support the inference, as stated above, that the crime was in the process of perpetration when the police arrived, and the appellants, with at least two others (their convicted codefendant and the one who escaped), were participating therein. True, the closest any witness placed either of the appellants to the safe was three to four feet, but it would seem an extraordinary and unreasonable inference that all participants in the burglary made good their escape, leaving a group of innocent bystanders alongside the safe.

Proof of guilt beyond *all* doubt has never been required, even in the most serious criminal cases. In *Edwards v. State,* 198 Md. 132, 157, 158, 81 A. 2d 631, this Court said: "In any case, civil or criminal, to meet the test of legal sufficiency, evidence (if believed) must either show directly, or support a rational inference of, the fact to be proved. * * * In a criminal case the fact must be shown, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created. *The difference in degree of proof is ordinarily for the triers of facts."* (Emphasis supplied.) Again, in *Wright v. State,* 198 Md. 163, 170, 81 A. 2d 602, it was said: "The giving or refusal of such an instruction [the legal sufficiency of the evidence in a criminal case] is reviewable by the Court of Appeals. If there is any evidence before the jury on which to base a conviction, this Court will not disturb the verdict and will not

inquire into or measure the weight of the evidence * * *." (For a case very similar to the instant one where the appellate court sustained a finding of guilt by a jury, see *Bouchillon v. State*, 267 S. W. 2d 554 (Tex.).) A reversal in this case would necessarily require us to inquire into and weigh the evidence; as well as to take over, at least in part, the usual prerogative of the trial court in measuring the difference in the degree of proof.

At this point, two short excerpts from previous decisions of this Court seem particularly apposite:

> "The trier of facts in a criminal case is enjoined by law to give due force to the presumption of innocence, and then to proceed cautiously in weighing the evidence; but he is not commanded to be naive and to believe without scrutiny every glib suggestion or far-fetched fairy tale whether emanating from State or defense. An indispensable ingredient in judgment, in court as well as out of it, is a modicum of common sense." *Berry v. State*, 202 Md. 62, 67, 95 A. 2d 319.

> "To prove guilt beyond a reasonable doubt it is not necessary that every conceivable miraculous coincidence consistent with innocence be negatived." *Hayette v. State*, 199 Md. 140, 144, 85 A. 2d 790.

From what has been said above, it necessarily follows that the judgments will be affirmed.

*Judgments affirmed.*

HORNEY, J., filed the following dissenting opinion.

As I read it, the majority opinion holds in effect that the proximity of the time when and the place where the burglary was committed together with the presence of the defendants in and flight from the vicinity of the burglarized premises was sufficient to support a proper and permissible inference that the defendants had actually participated in the burglary. I cannot agree because in my opinion the mere coincidence of these factors, without more, was not enough to justify a conviction.

It may be that the defendants (Charles H. Tasco and Bob Curry) were among the "about three" or four persons, who, within a few minutes after the burglary, had gathered together about five feet from the stolen safe which had been abandoned on the vacant lot on Bruce Street approximately a third of a block south of the burglarized premises. Nevertheless, it must be kept in mind that one of those who was positively seen by the police got away and that the layout of the vicinity was such that there was nothing to stop others who might have been present from fleeing unobserved along an unguarded escape route down Bruce Street to Presstman. Yet, be that as it may, the defendants were among those who were captured when they attempted to flee as the police converged on both ends of the alley between Bruce and Mount Streets. But other than these pieces of circumstantial evidence, there was absolutely no evidence that the defendants had participated in the crime. Indeed, other than the uncorroborated statements of the accomplice (Nathan Brewer, Jr.), who did not appeal— to the effect that, though Curry was not helping to push the safe, he had seen him standing about three or four feet from it; and that, though Tasco had not touched the safe, he had seen him standing in the alley in the rear of the food market— there was no evidence that the defendants had ever been near the stolen safe. On the contrary, one of the defendants (Curry) claimed that he had seen Brewer at a dice game in the alley and the other (Tasco) claimed that he was merely walking through the alley. Moreover, Officer Catania frankly admitted that he could not identify either of the defendants as one of the men he had seen standing near the safe as he entered Bruce Street and approached the west end of the alley. And, which is more important, there was no showing that the defendants had ever had possession of or control over any part of the stolen property—the safe, the pennies or the cigarettes—or the tools used to break into and out of the burglarized premises, a fact which the majority seemingly chose to ignore as having any bearing on the question of the sufficiency of the evidence to convict.

The majority concede that mere presence of a person at the scene of a crime is not sufficient to establish that that person

was either a principal or an accomplice, and that flight alone is not controlling. We all agree that presence as well as flight are factors which may be considered in determining guilt. But, unlike the majority, it is my opinion that the factors of time and place, like the factors of presence and flight, merely constitute additional circumstances from which an inference may be drawn, but which, without more, even when all of the circumstances are considered together, are not conclusive of guilt or sufficient to convict.

Of course, when a case is tried by a court sitting without a jury, as this one was, the rule (Maryland Rule 741c) is that upon appeal this Court may review the sufficiency of the evidence, but the verdict may not be set aside on the evidence alone unless the verdict was clearly erroneous. But where, as here, the State relies solely on circumstantial evidence to support a conviction—whether in a court trial or a jury trial—the test is as was said in *Shelton v. State,* 198 Md. 405, 84 A. 2d 76 (1951), at p. 412: "Before a verdict of guilty is justified, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence." See also *Vincent v. State,* 220 Md. 232, 151 A. 2d 898 (1959); *Glaros v. State,* 223 Md. 272, 164 A. 2d 461 (1960). The question then, is whether the circumstances in this case are inconsistent with or exclude every reasonable hypothesis of innocence. I think the circumstances proved are not only consistent with innocence, but definitely do not exclude every reasonable conjecture of guiltlessness. So, it is my belief that proof of facts and circumstances which are as consistent with innocence as with guilt—in the absence of some positive inculpatory evidence to impute guilt, such as the existence of fingerprints or the possession of the fruits of the crime or the tools used to perpetrate it—are not enough to warrant a finding of guilt. At most, the circumstantial evidence in this case, though it may raise a supposition of guilt, does no more than show that the defendants had an opportunity to participate in the burglary.

In *People v. Draper,* 160 P. 2d 80 (Cal. 1945), where the accused was found at the burglarized premises at the time or shortly after the burglary was committed, was unable to ac-

count for his time during the period the burglary was committed, ran and sought to elude the police and lied about his whereabouts immediately before the commission of the crime, it was held (at p. 83) that while the evidence "points the finger of suspicion" at the accused and "shows that he had an opportunity to participate in the commission of the crime," the evidence was not "sufficient to sustain the burden resting on the People of proving him guilty beyond a reasonable doubt for it is the rule here that evidence that merely raises suspicion, no matter how strong, of the guilt of a person charged with a crime is not sufficient to sustain a verdict and judgment against him."

In *Commonwealth v. Williams,* 118 A. 2d 228 (Pa. Super. 1955), where the automobile of the accused had been seen leaving the vicinity of the burglarized premises at two o'clock a.m., and, upon pursuit by the police, the accused abandoned the car and fled, the Superior Court of Pennsylvania, in reversing the lower court because the evidence was insufficient to establish beyond a reasonable doubt that the accused had any connection with the burglary, stated, (as this Court held in effect in *Felkner v. State,* 218 Md. 300, 146 A. 2d 424 [1958]), that "if it were shown that appellant had possession of the safe recently stolen in the perpetration of the burglary, this could be considered by the finder of fact as evidence of guilt on the charges of both larceny and burglary."

And in *Poythress v. State,* 20 S. E. 2d 212 (Ga. App. 1942), when the accused, a twice-convicted moonshiner, walked into a police "stakeout" around a still and ran when he saw the revenue officers, but denied any knowledge of the existence or operation of the still, claiming he was in the woods looking for lost hogs, it was held that the evidence was insufficient to support a conclusion that the accused had participated in the illicit operation of the still. See also *People v. Baldiseno,* 42 N. Y. S. 2d 812 (App. Div. 1943) ; *Demonia v. State,* 17 S. E. 2d 204 (Ga. App. 1941) ; *Hilson v. State,* 276 S. W. 272 (Tex. Cr. 1925).

The majority cite *Bouchillon v. State,* 267 S. W. 2d 554 (Tex. Cr. 1954), as "a case very similar to the instant one." The facts in *Bouchillon,* though similar, were by no means

the same as those in the instant case and, for that reason, the case is clearly distinguishable. There (in *Bouchillon*), shortly after the burglary and removal of the safe from the burglarized premises, the accused, who was recognized by the police, and his companions were seen in a secluded spot near the safe, which had been recently blown open, and some of the money removed therefrom was recovered. All of the bystanders fled when the police approached, and, when apprehended, the accused failed to make any explanation of the predicament in which he was found. Thus, in *Bouchillon*, the arresting officer specifically recognized the accused as one of the bystanders, while in the instant case Officer Catania was unable to testify that either of the defendants was one of those he had seen standing near the safe. In *Bouchillon*, the area in which the safe was found was a lonely country road, while in this case the safe was left under a street light on an active alley in a densely populated area of a large city. In *Bouchillon*, some of the money taken from the safe was recovered, while in the case at bar the pennies taken from the burglarized premises were never found. And, in *Bouchillon*, the accused did not offer or attempt to explain his presence at the place where the safe was found, while in the present case both defendants gave reasons, albeit highly suspicious ones, for their presence near the safe.

Finally, even though the reasons given by Tasco and Curry in explanation of their presence in the alley when they were confronted with the co-defendant (Brewer), were questionable, and even though the trial court may have had sufficient reason to disbelieve their testimony, it is certain, nevertheless, that the State was not thereby relieved of proving that the defendants were guilty. No matter how untruthful the defendants may have been, they were not required to prove their innocence. On the contrary, the burden of proving their guilt beyond a reasonable doubt and to a moral certainty was on the State, and in my opinion it failed to do so.

For the reasons herein stated, I would set aside the judgments and remand the case for a new trial.