759 A.2d 306

**Leonard Jovan MORGAN**

v.

**STATE of Maryland.**

**No. 2588, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Sept. 8, 2000.

114

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Jack Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before MOYLAN, DAVIS and JAMES S. GETTY (retired, specially assigned), JJ.

DAVIS, Judge.

Appellant Leonard Jovan Morgan was convicted by a jury on August 13, 1997, in the Circuit Court for Prince George's County, of second degree murder. He appealed his conviction and we reversed and remanded the case for retrial in an unreported opinion, Morgan v. State, No. 1693, September Term 1997 (filed July 20, 1998). The reversal was based on the trial court's erroneous denial of appellant's motion to suppress his statements to the police.

Appellant was retried and, on September 1, 1999, he was again convicted of second degree murder and was sentenced to thirty years imprisonment. Appellant timely noted this appeal, presenting two questions, which we rephrase:

I. Did the trial court err in denying appellant's motion for judgment of acquittal based on insufficiency of the evidence and thereby submitting the case to the jury?

II. Did the trial court abuse its discretion by denying appellant's motion for mistrial after the prosecutor made reference to appellant's first trial?

We answer both of these questions in the negative and, accordingly, affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

This appeal stems from the January 4, 1997, murder of Richard McCoy. No direct evidence was presented that appellant murdered the victim. The substance of the circumstantial evidence adduced at trial was that appellant telephoned his aunt, Deborah Phillips, on the evening of January 4, 1997. He was frightened, upset, and crying, he told her, because someone had been shooting at him and his friends, Eddie Mathis and McCoy, while they were driving in the victim's car. Several witnesses testified that they saw McCoy in the company of his two friends, Mathis and appellant, on Friday evening, January 4, 1997. On January 5, 1997, an off-duty police officer found the victim's body on the side of the road at Suitland Parkway in Prince George's County. Autopsy reports revealed that the victim was shot twice in the head, once with a .44 millimeter handgun and also with a .9 millimeter handgun. On January 9, 1997, investigators found the victim's car in Washington, D.C. The car exhibited no signs of having been damaged from gunshots.

Martha Rorie and Shirley Bell, McCoy's two cousins with whom he lived in Washington, D.C., testified that they saw McCoy on that evening at their residence with Anthony Ross, Patrick Woods, and two other individuals identified as "Steve" and "Moochie." Ross testified that, later in the evening, he

saw the victim sitting in his yellow Nova automobile in front of his house in the District of Columbia. McCoy was sitting in the passenger's seat of his car, Mathis was sitting in the driver's seat,[1] and appellant was standing on the porch in front of the house. According to the testimony of appellant's aunt, it was after appellant was seen in the company of Mathis and the victim that appellant called his aunt to report that someone had been shooting at them while they were inside the car.

Subsequent to that telephone conversation, the police were able to obtain the telephone number of the telephone appellant used to call his aunt, which was later traced to Cecilia Scarborough's apartment. Police searched Scarborough's apartment and found a plastic bag containing a blood-stained vest on her balcony; the blood was subsequently analyzed and found to be consistent with that of the victim's DNA.

Scarborough testified that Mathis and appellant were in her apartment when she arrived on the night of the murder, between nine and ten o'clock in the evening. Neither Mathis nor appellant appeared to her to be upset or injured and both acted normal. The time line of events before and after the murder of Richard McCoy is essential to our review of appellant's claim of insufficiency of the evidence:

## TIME LINE

### January 4, 1997 to January 11, 1997

January 4, 7:15 p.m.—McCoy's cousins, Martha Rorie and Shirley Bell, last see the victim as he left their residence.

January 4, evening hours: McCoy returns to residence to get his keys, telling Bruce Tucker that he would be right back; Tucker also identifies victim's hat at trial.

January 4, 7:00–8:00 p.m.—Anthony Ross sees McCoy sitting in passenger seat of his car and Mathis sitting in the

---

1. Although appellant's brief states that Ross testified that the victim was sitting in the driver's seat of his car, in fact, the witness testified that the victim was sitting "in the passenger side of his car...."

driver's seat, as appellant stood on the front porch of the residence.

January 4, 8:00 p.m.—Appellant telephones his aunt, Deborah Phillips, from a telephone number recorded by her Caller I.D., and said that "someone was shooting at him and he was scared," that he was with Eddie and Richard, and that "Richard and Eddie got hit." Concerned about appellant's telephone call, Phillips telephones the District of Columbia Police.

January 4, 8:45 p.m.—Claudio Herzfeld hears single loud gunshot emanating from Suitland Parkway, adjacent to his residence near where victim's body was discovered.

January 4, 9:00–9:30 p.m.—Cecilia Scarborough returns to her apartment and finds appellant and Eddie Mathis there, apparently uninjured and exhibiting "normal" demeanor; the pair stay overnight, leaving her apartment the next morning; a blue bag containing a vest stained with blood, the DNA of which was analyzed and found to be inconsistent with that of appellant and Mathis, but consistent with McCoy's DNA was placed by someone other than Scarborough on a chair on her balcony.

January 4, 10:00 p.m.—Officers Michael Baylor and Lazaro Gonzales of the Washington, D.C. Metropolitan Police respond to the "911" call placed by Deborah Phillips and, based on the information received from her, Gonzalez sent "units out to Suitland Parkway looking for a body and a yellow car" which he believed, ". . . belonged to a guy named Richard."

January 4, 11:15–11:55 p.m.—The police interview Shirley Gladney to ascertain if she knew anything about appellant; after the police left, she placed a telephone call to the number which had appeared on her Caller I.D. and she talked with appellant who "appeared okay on the phone."

January 5, 8:00 a.m.—Officer William Smith of the Washington, D.C. Metropolitan Police, who had just left work,

discovered the victim's body beside Suitland Parkway in Forestville.

January 9—Sergeant Daniel Lawson of the United States Park Police processes the 1977 Chevrolet Nova discovered at Suitland Parkway and Meadowview Drive; he details the soot covering the entire inside of the vehicle "from a fire that had been set in the vehicle" interior, a stained carpet from the floor of the right rear of the vehicle; all windows were intact and the recovery of a Green Bay Packers baseball hat from the driver's side floor of the vehicle.

January 11, 12:30 a.m.—Robert Rule, Lieutenant Investigator in the Special Forces Unit of the United States Park Police executed a search warrant for 6553 Hillmar Drive, Apartment 202, the premises leased to Cecilia Scarborough; recovered from a green plastic chair on the balcony was a plastic bag later found to contain a vest stained with blood analyzed as consistent with the DNA of the victim's blood.

## ANALYSIS

### I

### SUFFICIENCY OF CIRCUMSTANTIAL EVIDENCE

#### A. STANDARD OF REVIEW

The Court of Appeals penned the well-settled standard of appellate review of the trial court in *State v. Albrecht,* 336 Md. 475, 478–79, 649 A.2d 336 (1994):

At the outset, we emphasize that when an appellate court is called upon to determine whether sufficient evidence exists to sustain a criminal conviction, it is not the function or the duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case. Rather, we review the evidence in the light most favorable to the State, ... giving due regard to the trial court's finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the

credibility of witnesses. Fundamentally, our concern is not with whether the trial court's verdict is in accord with what appears to us to be the weight of the evidence, ... but rather is only with whether the verdicts were supported with sufficient evidence—that is, evidence that either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt.

In other words, when a sufficiency challenge is made, the reviewing court is not to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt"; rather, the duty of the appellate court is only to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

(Citations and footnote omitted.)

Moreover, in recapitulating the essence of our review, we said, in *Stouffer v. State*, 118 Md.App. 590, 606, 703 A.2d 861 (1997), *aff'd in part, rev'd in part*, 352 Md. 97, 721 A.2d 207 (1998), citing *Barnes v. State*, 31 Md.App. 25, 29, 354 A.2d 499 (1976):

In other words, a guilty verdict may be set aside only if there is no legally sufficient evidence or inferences drawable therefrom on which the jury could find the accused guilty beyond a reasonable doubt.

### B. CIRCUMSTANTIAL EVIDENCE

Judge Salmon, writing for the Court in our recent decision in *Jensen v. State*, 127 Md.App. 103, 117–18, 732 A.2d 319, *cert. denied*, 356 Md. 178, 738 A.2d 855 (1999), discussed the sufficiency of circumstantial evidence to sustain a criminal conviction:

"Maryland has long held that there is no difference between direct and circumstantial evidence." A conviction may be based on circumstantial evidence alone. If guilt is based on

a single strand of circumstantial evidence, however, to meet the standard for legal sufficiency, the circumstances must be inconsistent with any reasonable hypothesis of innocence. Nevertheless, the Court of Appeals has made clear that this last-mentioned rule does not apply when the conviction is based on multiple strands of circumstantial evidence. In *Hebron*, the Court explained:

> (W)here the circumstantial evidence consists of more than a single strand, . . . "an instruction requiring the exclusion of reasonable hypothesis of innocence is not only unwarranted, but improper." This is so because, in such a case, the circumstances, taken together and viewed from the State's perspective, are inconsistent with, although not absolutely dispositive of, the defendant's innocence.

(Citations and footnote omitted.)

In rejecting appellant's contention in *Jensen* that a judgment of conviction must be reversed if the circumstantial evidence is consistent with any reasonable theory of innocence when the State's evidence is purely circumstantial, we explained that the rule *Jensen* embraced was misleading and incomplete in the factual context of that case. We then set forth the principle in its entirety as recounted in *Hebron v. State*, 331 Md. 219, 627 A.2d 1029 (1993). Judge Robert M. Bell, currently Chief Judge, explained at 331 Md. 234, 627 A.2d 1029:

> The cases referring to circumstantial evidence not excluding every reasonable hypothesis of a defendant's innocence are cases in which there is circumstantial evidence of the defendant's guilt and other evidence, either circumstantial or direct, tending to negate that evidence and no basis upon which a rational finder of fact could return a verdict of guilty without speculating as to which of the two versions is the correct version. A jury faced with that state of the evidence could not logically, nor lawfully, return a guilty verdict; hence, as the Court of Special Appeals pointed out, given that scenario, "there is nothing for the jury to decide,

and, upon proper motion, the judge is duty-bound, as a matter of law, to enter a judgment of acquittal."

(Citations omitted.)

The *Hebron* Court noted that the Court of Appeals, in *Pressley v. State,* 295 Md. 143, 150, 454 A.2d 347 (1983), had previously rejected the argument that each fact constituting the circumstantial evidence is disconnected and independent and must be proved beyond a reasonable doubt:

> In *Pressley,* a case involving but one strand of circumstantial evidence, the defendant urged that, in the case of circumstantial evidence consisting of a number of disconnected and independent facts, each fact must be proved beyond a reasonable doubt. The Court rejected the argument, noting that, where that situation exists,

> > "(c)ircumstantial evidence is not like a chain which falls when its weakest link is broken, but is like a cable. The strength of the cable 'does not depend upon one strand, but is made up of a union and combination of the strength of all its strands. No one wire in the cable that supports the suspension bridge across Niagara Falls could stand much weight, but when these different strands are all combined together, they support a structure which is capable of sustaining the weight of the heaviest engines and trains. We therefore think it is erroneous to speak of circumstantial evidence as depending on links, for the truth is that in cases of circumstantial evidence each fact relied upon is simply considered as one of the strands and all of the facts relied upon should be treated as a cable.' "

> . . .

Conversely, albeit only implicitly, the Court recognized that "(o)nly when there is 'but one strand' of evidence or successive links of evidence connecting the defendant to the crime must the trier of fact be satisfied beyond a

reasonable doubt as to each link in the chain of circumstances necessary to establish the defendant's guilt."

*Hebron,* 331 Md. at 227–28, 627 A.2d 1029 (citations omitted).

Ultimately, the *Hebron* Court affirmed our determination regarding when the "exclusion of reasonable hypothesis of innocence" doctrine applies:

The Court of Special Appeals was correct, therefore, when it concluded that where the circumstantial evidence consists of more than a single strand, the *West [v. State,* 312 Md. 197, 539 A.2d 231 (1988) ] proposition does not apply. Indeed, in that circumstance, "an instruction requiring the exclusion of reasonable hypothesis of innocence is not only unwarranted, but improper." This is so because, in such a case, the circumstances, taken together and viewed from the State's perspective, are inconsistent with, although not absolutely dispositive of, the defendant's innocence.

A conviction may be sustained on the basis of a single strand of circumstantial evidence or successive links of circumstantial evidence. It is only when that evidence is also consistent with a reasonable hypothesis of innocence that it is insufficient. The question thus becomes when is a single strand or successive links of circumstantial evidence consistent both with guilt and innocence?

*Id.* at 228–29, 627 A.2d 1029 (citations omitted).

 The evidence to support a finding of guilt of the crime of murder may be either direct or circumstantial and, where legally sufficient evidence of *corpus delecti* and criminal agency are presented, the question of whether a defendant is guilty is a question of fact to be determined by the jury. *See generally id.* at 237–38, 627 A.2d 1029. Circumstantial evidence may support a conviction when the circumstances, taken together, do not require the trier of fact to resort to speculation or mere conjecture. *Taylor v. State,* 346 Md. 452, 458, 697 A.2d 462 (1997).

 It is not necessary, however, that the circumstantial evidence be such that no possible theory other than guilt can

stand. *See Hebron,* 331 Md. at 227, 627 A.2d 1029 (quoting *Gilmore v. State,* 263 Md. 268, 292–93, 283 A.2d 371 (1971), *vacated in part,* 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763 (1972)). It is also neither necessary that the circumstantial evidence exclude every possibility of the defendant's innocence, nor that it produce an absolute certainty of defendant's guilt in the minds of the jurors. *Id.* Proof of guilt beyond all doubt has never been required. *Tasco v. State,* 223 Md. 503, 510, 165 A.2d 456 (1960), *cert. denied,* 365 U.S. 885, 81 S.Ct. 1036, 6 L.Ed.2d 195 (1961).

■ "[T]o meet the test of legal sufficiency, evidence (if believed) must either show directly, or support a rational inference of, the fact to be proved." *Id.* A jury is asked to weigh the evidence given to them based upon its experience with people and events. *Hebron,* 331 Md. at 225, 627 A.2d 1029 (quoting *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 99 L.Ed. 150 (1954)). "If the jury is convinced beyond a reasonable doubt, we can require no more." *Id.* A reversal of the lower court, sitting with a jury, would require an appellate court to inquire into and weigh the evidence, essentially taking over the prerogative of the trial court, which we have no authority to do. *See generally Tasco,* 223 Md. at 510–11, 165 A.2d 456.

## C. THE ROLE OF THE JUDGE *VIS–A–VIS* THAT OF THE JURY

■ The Court of Appeals has pointed out in *In re Petition for Writ of Prohibition,* 312 Md. 280, 539 A.2d 664 (1988), that what a trial court does in regard to passing upon the sufficiency of the evidence is "strictly circumscribed." *Id.* at 310, 539 A.2d 664. The trial judge, sitting with a jury, may not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt. *Id.* (citation omitted). Prior to a constitutional amendment in 1950, trial courts, and also appellate courts, did not have the power to review the sufficiency of the evidence of a criminal case tried before a jury. *Brooks v. State,* 299 Md. 146, 149, 472 A.2d 981 (1984) (citation omitted).

That amendment has since been supplemented by statute, MD.CODE (1996 Repl.Vol.), ART. 27, § 593, which states, in pertinent part, that "the jury shall be the judges of law, as well as of fact, except that at the conclusion of the evidence for the State a motion for judgment of acquittal on one or more counts ... may be made by an accused on the ground that the evidence is insufficient in law to justify his [or her] conviction...." If the trial court denies a defendant's motion for acquittal, the defendant then is entitled to have the denial reviewed on appeal. *See Brooks,* 299 Md. at 150, 472 A.2d 981 (footnote omitted). An appellate court, therefore, is authorized to review the sufficiency of the evidence, but that review is limited. *State v. Devers,* 260 Md. 360, 371, 272 A.2d 794, *cert. denied,* 404 U.S. 824, 92 S.Ct. 50, 30 L.Ed.2d 52 (1971). The appellate court does not

> inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, but merely ascertains whether there is any relevant evidence, properly before the jury, legally sufficient to sustain a conviction.

*Id.* (citations omitted).

▮▮▮ In determining the sufficiency of the evidence underlying a criminal conviction, the appropriate standard for the trial court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Dawson v. State,* 329 Md. 275, 281, 619 A.2d 111 (1993) (citations omitted). It is the judge's role to determine whether the evidence that the State has presented is legally sufficient to warrant sending the case to the jury. *Hebron,* 331 Md. at 234, 627 A.2d 1029. If the judge determines that the evidence is sufficient, he or she will submit the issues to the jury for its determination. *Id.* at 235, 627 A.2d 1029. Alternatively, if the judge determines that the evidence is legally insufficient to send the case to the jury, then the judge must direct a verdict of acquittal. *Id.* (citation omitted).

From the jury's perspective, in a case that is purely circumstantial, the body of evidence submitted to it by the trial judge must be such that, in conjunction with weighing the evidence and assessing the credibility of the witnesses, there are sufficient strands interconnected to establish criminal agency and *corpus delecti* beyond a reasonable doubt. That process is aptly described in our decision in *Dinkins v. State,* 29 Md.App. 577, 579–80, 349 A.2d 676 (1976), opinion adopted 278 Md. 238, 362 A.2d 91 (1976):

We observed in *Evans v. State,* 28 Md.App. 640, 349 A.2d 300 (1975): "In a real sense, the whole decision-making process is the process of drawing inferences. From fact A we infer fact B.... The whole phenomenon of circumstantial evidence is the phenomenon of inferring facts in issue from facts established." We pointed out that certain inferences, out of the infinite swarm of their fellows, have been singled out for legal analysis.

We continued, regarding the judge's role:

We indicated in *Evans* that an inference comes to judicial attention in two situations. "When we are called upon to measure the legal sufficiency of evidence, we have to determine whether established facts A and B are legally sufficient to give rise to a fair inference of fact C, the ultimate fact in issue. We are similarly called upon to measure the efficacy of certain inferences when we are asked to instruct a jury that it may (although it need not) infer fact C from established facts A and B." [*Evans v. State,*] 28 Md.App. at 703, 349 A.2d 300. Thus, upon legally sufficient proof that certain goods were recently stolen, that they were in the exclusive possession of the accused, that the possession was not satisfactorily explained, and in the absence of other facts indicating that the accused was more likely to be the receiver than the thief, *Jordan v. State,* 219 Md. 36, 47, 148 A.2d 292 (1959), *cert. den.,* 361 U.S. 849, 80 S.Ct. 105, 4 L.Ed.2d 87 (1959), the judge at a bench trial may infer, in his role as the trier of fact, that the accused was the thief. At a jury trial, the judge may, and at the request of a party,

shall, Maryland Rule 756, § b, instruct the jury that it may infer that the accused was the thief.

*Id.* at 581–82, 349 A.2d 676.

Finally, we explained:

The mere fact that there is some evidence tending to explain the possession consistent with innocence does not bar the judge in a bench trial from drawing the inference or in a jury trial from instructing the jury on the inference. The trier of fact must weigh the explanation to determine whether it is reasonable or "plausible," or "satisfactory." It is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference. But the burden of proving beyond a reasonable doubt that the accused stole the property remains in the prosecution.

*Id.* at 582–83, 349 A.2d 676 (citation omitted).

## THE INSTANT CASE

Appellant initially contends that the trial court erred in denying his motion for judgment of acquittal, based on insufficiency of the evidence. Appellant posits that the State's evidence was entirely circumstantial and at best could only raise the *possibility* of defendant's guilt, which would be insufficient to support an inference of guilt beyond a reasonable doubt. Appellant argues that the circumstantial evidence presented in this case could support four different theories: (1) that appellant was the perpetrator of the crime, (2) that Mathis was the perpetrator, and appellant merely an aider and abettor, (3) that appellant only helped to set fire to the victim's car and dispose of the evidence of the crime and is therefore an accessory after the fact, or (4) that appellant did not participate in the killing in any way.

He cites *Taylor v. State*, 346 Md. 452, 458, 697 A.2d 462 (1997), for the proposition that, "when the evidence equally supports two versions of events, and a finding of guilt requires speculation as to which of the two versions is correct, a conviction cannot be sustained." (Citations omitted.) Citing

*State v. Simpson,* 318 Md. 194, 567 A.2d 132 (1989), which held that the fact finder must not be required to speculate as to whether the defendant possessed cocaine or heroin, appellant essentially complains that the jury was required to speculate as to his participation in the murder of Richard McCoy. Appellant argues that the evidence presented at trial was only sufficient to arouse suspicion and could not support an inference beyond a reasonable doubt. Citing *Taylor,* he argues that the evidence in the case at hand equally supports more than one version of the events, requiring speculation as to which of the versions is correct. *See Taylor,* 346 Md. at 458, 697 A.2d 462. His challenge to the sufficiency of the evidence is most succinctly articulated by trial counsel's argument on the motion for judgment of acquittal:

> The problem is he's not being charged with an accessory after the fact. He can only be found guilty of a principal in the first degree or a principal in the second degree. Now if he had been charged with an accessory after the fact, *then I wouldn't be standing here.*

Literally, the above trial concession may be interpreted as an acknowledgment that appellant does not argue that, on the state of the evidence, it would not have been within the purview of the jury to find appellant guilty of being a principal in either the first or second degree or an accessory after the fact had he been charged separately with the latter offense. Our task, as we see it, *sub judice,* is, applying settled legal principles regarding the sufficiency of the evidence to sustain a conviction when such evidence is entirely circumstantial, to determine whether the circumstances, taken together, required the jury to resort to speculation or mere conjecture.

We begin by narrowing the focus of our review. Appellant's only assail on his conviction for second degree murder is upon the sufficiency of the proof of his participation, i.e., whether he was a principal, accessory after the fact, or an uninvolved observer. We must decide whether the facts established are legally sufficient to give rise to the ultimate fact in issue, namely, that appellant either committed the second degree murder of Richard McCoy or aided and abetted Mathis in

committing the murder. In other words, we must determine whether there was legally sufficient evidence from which the jury could be convinced beyond a reasonable doubt as to *what* appellant did relative to the crime, *when* he did it and under what circumstances. He offers two theories of what may have occurred, which he insists are incompatible with guilt of murder in the second degree, i.e., that he only helped dispose of the victim's body and is guilty only of being an accessory after the fact or that he "did not participate in the killing in any way."

Appellant conceded at trial that the gravamen of his argument is that accessory after the fact was not available to the jury as an alternative theory of culpability. As a consequence the circumstantial evidence was sufficient to support appellant's conviction for second degree murder should we conclude, from our review of the record, that the State produced evidence legally sufficient to convince the jury beyond a reasonable doubt of appellant's actions which were indicative of a *mens rea*, that demonstrated his complicity or prior knowledge that McCoy would be murdered.

## A. PRESENCE AT THE SCENE OF THE CRIME

At the outset, "[w]hile a defendant's presence at the scene of a crime is 'a very important factor to be considered in determining guilt,' *Tasco v. State*, 223 Md. 503, 165 A.2d 456 (1960), . . . it is elementary that mere presence is not, of itself, sufficient to establish that that person was either a principal or an accessory to the crime." *Wilson v. State*, 319 Md. 530, 537–38, 573 A.2d 831 (1990). Although appellant attempts to discount the significance of his presence at the scene of the crime by arguing that his telephone call to his aunt "does not support an inference that [appellant] was in the car at the time of the shooting," our determination of whether appellant was, in fact, at the scene of the crime need not detain us long in view of the testimony of Rory, Bell, Tucker, and Ross, who place appellant in McCoy's vehicle a mere forty-five minutes before the telephone call to his aunt, in which he reported that someone had shot at McCoy, Mathis, and himself, wounding

McCoy and Mathis. Appellant, by his very telephone call, places himself at the scene of the crime.

## B. PARTICIPATION: PRINCIPAL AND ACCESSORY

In a recent case in which the State of Maryland asked the Court of Appeals to dispense with the common law distinction between principals and accessories, obviating the requirement to prove that an accomplice be present at the scene of the crime to be convicted as a principal, Judge Cathell, writing for the Court in *State v. Sowell,* 353 Md. 713, 718, 719, 728 A.2d 712 (1999) (quoting *State v. Ward,* 284 Md. 189, 197, 396 A.2d 1041 (1978)), explained:

> "A *principal in the first degree* is one who actually commits a crime, either by his own hand, or by an inanimate agency, or by an innocent human agent. A *principal in the second degree* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive. An *accessory before the fact* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration. An *accessory after the fact* is one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment."

> The main difference between an accessory before the fact and a principal in the second degree is that the latter must be actually or constructively present at the scene of the crime.

Not only must the State prove actual or constructive presence at the scene of the crime during its commission and complicity in the criminal event, the defendant must be charged as a principal:

> At common law, an indictment must charge a person correctly as principal or accessory according to the facts and on an indictment charging a person as principal there could be

no conviction on evidence showing that he was merely an accessory and vice versa. It is stated in *Perkins on Criminal Law* (1957), ch. 6, § 8, D, 1 b, page 583:

> The case may be lost in advance either by carelessness in the pleading or by a mistaken notion as to whether the particular defendant was or was not present at the time the crime was committed. One charged with felony as a principal cannot be convicted if the evidence established assessorial guilt, and one charged as an accessory cannot be convicted if the evidence shows him to have been a principal. One may be charged as a principal and as an accessory in separate counts of the same indictment, but the prosecution can be required to elect upon which count it will rely before the case is finally submitted to the jury.

*Id.* at 727–28, 728 A.2d 712 (citations omitted).

In the case, *sub judice*, probably as the result of trial strategy, the verdict sheet submitted to the jury contained only "First Degree Premeditated Murder," "Second Degree Specific Intent Murder," and "Use of a Handgun in the Commission of a Crime of Violence" as possible verdicts; the jury was not provided a means by which it could have indicated that it believed appellant was an accessory. Moreover, the thrust of the argument by counsel devolved upon whether the evidence was sufficient to establish that appellant was a principal and, consistent with the verdict sheet, the jury was never instructed as to what evidence would support a finding that appellant was an accessory. Thus, on appeal, the State either will prevail in its asseveration that there was legally sufficient evidence for the jury to find that appellant was a principal or if we conclude that the circumstantial evidence does not establish beyond a reasonable doubt that appellant was present during the commission of the crime and either committed the murder or aided and assisted Mathis, the failure to submit the charge that appellant was an accessory before or after the fact to the jury would be fatal to the State's case. Rejecting the State's plea to abolish the distinction between principals and accessories, the Court of Appeals concluded: "... Maryland retains the common law distinction

between principals and accessories. Respondent was tried only as a principal in the second degree, which requires presence, not as an accessory before the fact, which does not require presence." *Id.* at 734, 728 A.2d 712.

Although appellant challenges the sufficiency of the evidence that he was at the scene of the crime, actually or constructively at the very moment that McCoy was murdered, the principal thrust of his appeal is that there is a paucity of evidence to establish his degree of participation, i.e., that he fired the fatal shot or encouraged Mathis to do so. With respect to the degree of culpability for the commission of a felony, the legal test for the distinction between an accomplice in contrast to a witness for purposes of determining the need for evidentiary corroboration is the same test we apply to decide whether one, at the scene of the crime at the moment of its commission, is a principal. In characterizing what constitutes conduct resulting in criminal liability, we said in *Williams v. State,* 19 Md.App. 582, 593–94, 313 A.2d 700, *cert. denied,* 271 Md. 747 (1974):

> To be an "aider," a person must assist, support or supplement the efforts of another; to be an "abettor," a person must instigate, advise or encourage the commission of a crime and may in some circumstances include a person who is present at the commission of the crime without giving active assistance.

(Citations omitted.)

Thus, concluding, as we have, that there was indeed evidence from which the jury could find that appellant was present at the scene of the crime when McCoy was murdered, our search of the record for evidence of appellant's degree of participation sufficient to submit the case to the jury encompasses conduct which amounts to "advocating, encouraging, aiding or abetting." We need only look to the ill-conceived telephone call appellant placed to his aunt, which the jury could construe, given the time line, as a contemporaneous effort to ensure that he and Mathis avoided detection.

## C. THE FACTS ESTABLISHED—THE MULTIPLE STRANDS

Keeping in mind the test of legal sufficiency of circumstantial evidence to sustain a conviction of appellant as a principal in the first or second degree, there were sufficient "strands"— or facts relied upon by the jury from which it could infer the ultimate fact—in other words, to assemble the strands to formulate the "cable." The circumstances include appellant's presence at the scene of the crime during the commission thereof; the dispatch of units in the area of Suitland Parkway by Officers Baylor and Gonzales for the body of "a guy named Richard" and a yellow car, based on information received from Deborah Phillips, appellant's calm demeanor in a telephone conversation with Shirley Gladney after the murder, the recovery, from a balcony of the residence to which appellant and Mathis had gone after the murder, of a plastic bag containing a vest stained with the victim's blood, and, of course, the fact that appellant and Mathis, according to the time line, did not part company from an hour or two before the murder until the next day.

The most critical "strand" or fact established by the evidence was the substance of the telephone conversation to Deborah Phillips as well as when the telephone call was placed in relation to the time of the murder. Specifically incriminating was: (1) the account of "someone shooting at" appellant; (2) the assertion that "Richard and Eddie got hit"; (3) the assertion that appellant was scared; and (4) the furnishing of information regarding the location of McCoy and his vehicle to Deborah Phillips.

The strands of circumstantial evidence—the established first-level facts, insignificant until considered in relation to other established facts, include: (1) the fact that Mathis was not struck by gunfire as reported by appellant; (2) the intact car windows, gunshot holes through McCoy's baseball cap, and the physical evidence indicated that the fatal shot was fired within the vehicle; (3) the telephone number of the telephone used to call Deborah Phillips was traced to Scarborough's

telephone; (4) the proximity of Scarborough's apartment to the location where the incinerated Nova automobile was found; (5) Cecilia Scarborough had not been out on her balcony for some time prior to the recovery of the blood-stained vest; and (6) McCoy was shot twice in the head with two different caliber handguns—a .44 millimeter and a .9 millimeter.

## D. THE INFERENCES PERMISSIBLE—"THE CABLE"

In his appellate brief, appellant essentially argues two points—the insufficiency of evidence demonstrating his degree of participation in the murder and the evidence which establishes a greater likelihood that Mathis was the shooter. With respect to the latter, he reminds us that it was Mathis who had an intimate relationship with Scarborough and had a key to her apartment, from which the vest stained with the victim's blood was recovered. From these facts, he avers that an inference could be drawn that Mathis placed the bag containing the blood-stained vest on the chair on Scarborough's balcony. The testimony of Scarborough, he says, indicates that there was nothing unusual about how appellant was dressed; Mathis, on the other hand, was wearing only a T-shirt and gym shorts, which indicates Mathis shot McCoy and had, prior to Scarborough's arrival, "discarded his bloodied clothing."

Appellant can find no solace in evidence which establishes affirmatively the degree of participation of Mathis because such evidence, in no way, operates to diminish any evidence of his own degree of participation. In other words, the focus of our inquiry must be singularly on the actions and requisite criminal intent of appellant, regardless of the actions of Mathis. Assuming, *arguendo*, that the jury could infer from Scarborough's intimate relationship with Mathis and the fact that he had a key to her apartment that he had placed the bag containing the blood-stained vest on Scarborough's balcony, the jury was also entitled to infer, from the time line, that appellant continued to be in the company of Mathis shortly after appellant's telephone call inferentially placing him at the

scene of the crime, as Mathis disposed of the bag containing the blood-stained vest. Likewise, the evidence indicates that appellant was in Scarborough's apartment at a time when Mathis would have "discarded his bloodied clothing." For the jury to conclude that appellant was only an accessory after the fact, it would be required to suspend reason and infer that, despite the time line, appellant was a disinterested observer during the murder or he somehow alighted from the vehicle in which McCoy was shot before the murder, and then rejoined Mathis after McCoy was shot.

The time line chronicles appellant's whereabouts from 7:15 p.m. on January 4 until the morning of January 5, 1997. McCoy's cousins saw him in the passenger seat of his car and Mathis in the driver's seat as appellant stood on the front porch. The critical telephone call to his aunt, Deborah Phillips, wherein he reported that someone had fired shots at the car, that Richard and Eddie were shot, and that he was scared, according to Phillips, was placed at 8:00 p.m. A single gunshot, emanating from Suitland Parkway adjacent to a residence where the victim's body was discovered, was heard at 8:45 p.m. Scarborough returned to her apartment between 9:00 and 9:30 p.m. to find appellant and Mathis there; the pair were uninjured and appeared calm, remaining at the apartment the night of January 4, 1997, and departing in the morning.

Not only was it a permissible inference from the foregoing that appellant and Mathis were not apart during the period from 7:00 p.m. on January 4, 1997, until the next morning, it would strain credulity to believe that the very incriminating course of conduct appellant suggests should be attributable to Mathis, i.e., discarding the bloody vest and the suspected bloody clothing, did not occur in appellant's presence and was not part of a joint effort to avoid detection for the murder in which both had participated.

In his reliance on *Taylor v. State, supra,* appellant sets forth several hypotheses intended to establish an alternative version of events which results, he says, in requiring the jury

to speculate as to which of the two versions is correct. As we have observed, a scenario which only inculpates Mathis, but does not speak to appellant's participation, does not satisfy the *Taylor* test. Moreover, it is appellant who engages in speculation and conjecture when he suggests that McCoy may have been shot with two different handguns because the killer, having fired the last bullet in one handgun, had to use a second weapon.

Turning to the circumstantial evidence from which the jury could infer that appellant was a principal rather than an accessory after the fact, as we have observed, *supra,* the time line is a strand of evidence, tending to establish that appellant and Mathis were together an hour before the murder until the next morning, at least twelve to fourteen hours later. Appellant neither reported the murder of which he clearly had knowledge nor sought to separate himself from Mathis who, he asserts, circumstantially can be shown to be the principal in the first degree.

A mere thirty minutes elapsed between 7:30 and 8:00 p.m., when appellant was seen in the company of Mathis and the victim, and the telephone call to appellant's aunt, Deborah Phillips. Appellant's recurring theme, on appeal and in argument on the motion for judgment of acquittal is—and was before the trial judge: "No inference can be made or shown that [appellant] himself is either a principal in the first degree by being the one that fired the shot, or no evidence to show that he was a principal in the second degree by assisting Mr. Mathis in some overt act, doing something to assist Mr. Mathis *at the time of the murder.*"

We agree with appellant that the nub of his insufficiency claim of error devolves upon the question of whether the evidence, either directly or inferentially, establishes that appellant, in his words, at the very least, "did something to assist Mr. Mathis at the time of the murder." To be sure, presence at the scene and aiding or abetting in the commission of the murder is the least serious degree of participation in the second degree murder for which appellant may have been

convicted; the jury may well have decided appellant was, in fact, *the* shooter or *one of the shooters.* Although presence at the scene of a crime and association with the perpetrator during and for a substantial period after commission of the crime, without more, are insufficient to establish guilt, the failure to report the crime and part company with the shooter are but two circumstances which tend to show concert of action with the principal actor, if not that appellant himself was the shooter. Referring to appellant's telephone call to his aunt, the prosecutor characterized the call as "probably the strongest piece of evidence we have right now to put the [appellant] in the car." We agree.

Appellant's decision to telephone his aunt at the very time the offense was committed has inadvertently resulted in a story, ostensibly designed to be exculpatory, that has squarely inculpated him in the crime. Not only does the telephone call place appellant at the scene of the crime by reason of affirming that he was in the company of McCoy and Mathis shortly before Claudio Herzfeld heard a single gunshot coming from the vicinity of Suitland Parkway near where McCoy's body was discovered, the substance of the call is probative as to whether appellant was a participant or merely present during the commission of the crime. Having concluded that the evidence, circumstantially, places appellant at the scene of the crime, our review is narrowed to whether the evidence establishes that appellant was a participant, either as the shooter or an aider or abetter.

Notwithstanding that appellant insists that he could have been told where the body and the automobile were located by Mathis, the jury, from the time line, could further infer that the information obtained from Deborah Phillips that led Officers Baylor and Gonzales to dispatch units to Suitland Parkway in search of the body of "a guy named Richard" and a yellow car had been provided by appellant in his telephone call to his aunt. Only the killer or a witness to the murder would have possessed that information. According to Deborah Phillips, when appellant telephoned her, he was crying and upset and told her that he was frightened because someone had

been shooting at him and his friends. When Scarborough returned to her apartment, she found appellant to be calm and Gladney, in a telephone conversation three hours after the murder, said appellant appeared "Okay on the phone." Appellant's ruse bespeaks a *mens rea* of one who is a participant in the criminal event rather than an observer or accessory after the fact.

Because we are not required to determine whether the evidence was sufficient to sustain appellant's conviction based on a single strand of circumstantial evidence, we must evaluate the cumulative effect of the circumstances and the reasonable inferences therefrom and determine whether the record demonstrates that the State has shouldered its burden to establish appellant's guilt beyond a reasonable doubt, producing evidence from which the jury was not required to speculate or engage in mere conjecture.

Our appellate role is not to concern ourselves with the weight or quality of the evidence; however, unlike a case based on direct evidence, we have been constrained to engage in an expansive review to determine whether the sum total of the cumulative evidence presented provides a legally sufficient basis for the jury to determine guilt. To be sure, our review is limited to whether there was circumstantial evidence from which a jury could, without speculating, find appellant guilty of second degree murder beyond a reasonable doubt.

It was not by only suspicion or conjecture that the jury found appellant guilty of second degree murder. If the jury chose to believe the State's witnesses and drew inferences from the totality of the circumstances, as is its prerogative, our role is not to inquire into that evidence and determine a different outcome. We agree with the trial court that the evidence could lead a rational trier of fact reasonably to find that appellant was guilty of second degree murder.

Finally, appellant's protestations to the contrary notwithstanding, the jury was at liberty to infer from the fact that the fatal shots were fired from a .9 millimeter and a .44 caliber handgun that there were two assailants and, in conjunction

with the evidence that appellant and Mathis were the only two persons seen with McCoy and with each other after the murder, that appellant and Mathis each fired a shot into McCoy's head. Were we to evaluate each of the above circumstances as "links" which, if broken, would result in a break in the chain, we might find rejecting appellant's assail on his conviction problematic. *Hebron* and *Pressley,* however, teach us that our task is to determine whether the circumstantial evidence in this case "is made up of a union and combination of the strength of *all its strands,*" rather than being dependent upon one link. We neither conclude that the versions of events offered by appellant is supported equally by the evidence to the version of events advanced by the State, nor that the jury was required to speculate or engage in conjecture in its finding of guilt. *Taylor,* 346 Md. at 458, 697 A.2d 462.

### E. THE ULTIMATE FACT: APPELLANT AT LEAST AIDED OR ABETTED

In sum, we conclude from our review of the record that the circumstantial evidence adduced was sufficient to support appellant's conviction as a principal. When, as here, a conviction is based entirely on multiple strands of circumstantial evidence from which the jury may find guilt without engaging in speculation or conjecture, the fact finder is not required to give credence to hypotheses offered by appellant to exculpate himself.

In the instant case, given the relative ease in arriving at the conclusion that the evidence established appellant's presence at the scene of the crime, the only question remaining for resolution by the trial judge was whether there was evidence of appellant's participation in the criminal episode. We conclude that there was.

The determination that there existed an evidentiary predicate from which the jury could decide whether—and to what degree—appellant was involved, removed the issues of his presence and participation from the realm of speculation as

proscribed by Maryland law. *Taylor,* 346 Md. at 458, 697 A.2d 462. Having decided that there was evidence from which the jury could determine that appellant's involvement was that of a participant while present during the commission of the crime, the trial judge's role in evaluating the evidence was concluded and it then became the jury's function to assess the credibility of the witnesses and accord what it considered the proper weight to (1) the evidence of his presence at the scene of the crime and (2) the incriminating nature of appellant's actions. Accordingly, we hold that the trial court's ruling on the threshold issue of the existence, *vel non,* of evidence of appellant's presence at the scene of the crime and participation was proper and that the court did not err by denying appellant's motion for judgment of acquittal and in submitting the case to the jury.

## II

## PROSECUTOR'S REFERENCE
## TO PRIOR PROCEEDING

Appellant next contends that the trial court erred in refusing to declare a mistrial after the prosecutor revealed to the jury that there had been a prior trial for the same offense. During the direct examination of Shirley Gladney, the prosecutor asked the witness if she recalled "testifying in this matter in an earlier trial date." Appellant objected and, outside the presence of the jury, requested a mistrial, which the trial court denied. We perceive no abuse of discretion with the trial court's decision.

It is well settled that the decision to grant a mistrial rests in the discretion of the trial judge and our review is limited to whether there has been an abuse of discretion. *Coffey v. State,* 100 Md.App. 587, 596–97, 642 A.2d 276 (1994). When the motion for mistrial is denied, our job is to determine whether any overwhelming prejudice has occurred to the defendant. *See generally id.* at 597, 642 A.2d 276. The denial of a motion for mistrial, therefore, will be reversed only if the defendant was so clearly prejudiced that

the trial court's denial constituted an abuse of its discretion. *Hunt v. State,* 321 Md. 387, 422, 583 A.2d 218 (1990), *cert. denied,* 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 86 (1991)(citing *Johnson v.* State, 303 Md. 487, 516, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986)). The mere occurrence of improper remarks does not by itself constitute reversible error; rather, the remark must have been a material factor in the conviction. *Poole v. State,* 295 Md. 167, 194, 453 A.2d 1218 (1983) (*quoting Wilhelm v. State,* 272 Md. 404, 431, 326 A.2d 707 (1974)).

█ In the instant case, the prosecutor's reference to an "earlier trial date" neither informed the jury that appellant had previously been tried for the same offense or that there had been a conviction therefor. Appellant argues that there is a "substantial possibility, if not a probability," that one or more of the jurors drew an inference that he had been found guilty at a prior trial in this matter. Appellant relies on *Coffey,* wherein we held that a police officer's testimony that included a mention of defendant's previous trial and conviction warranted a mistrial. *See Coffey,* 100 Md.App. at 598, 642 A.2d 276. In that case, we stated that "we cannot think of a more prejudicial disclosure than a jury learning that the defendant had been tried and convicted by another jury for the very same charges." We believe the facts in *Coffey* are distinguishable from the instant case.

Here, the testimony of Gladney made no mention of defendant's prior conviction. The jury, therefore, had no way of inferring that the reference to the "earlier trial date" was, in fact, appellant's trial. The trial judge asked both counsel to approach the bench, at which time the judge admonished the prosecutor, but was not asked to give a curative instruction to the jury regarding the remarks. The court's failure to give a curative instruction, we conclude from the record, avoided calling the jury's attention to the matter.

Appellant also relies on *Poole v. State, infra,* wherein a State's witness made reference to the defendant's prior trial. Appellant argues that, because the witness in that case cor-

rected himself when he said "I remember the last trial," by immediately rephrasing his statement to "... the last time," the jury would not necessarily be aware that the witness was referring to a previous trial. *Poole,* 295 Md. at 193, 453 A.2d 1218. However, the ruling in *Poole* does not rest on the fact that the witness corrected his improper remark. The Court of Appeals explained in *Poole* that, even if the jury inferred from the State's witness that there had been a prior trial, that inference, in and of itself, was not necessarily prejudicial to the appellant's right to a fair trial. *See generally Poole,* 295 Md. at 193–94, 453 A.2d 1218. Thus, in *Poole,* the Court held that the jury's knowledge of a prior trial, alone, did not warrant concluding that the trial judge abused his discretion in denying a motion for mistrial. *Id.* at 194, 453 A.2d 1218. Moreover, as the State points out, the jury was aware of the complicity of Mathis and the fact that the evidence of different bullets recovered from the victim's head may have just as easily persuaded the jury that "an earlier trial date" referred to a date for the trial of Mathis or others for McCoy's murder.

We are persuaded that the statement by the prosecution, referring to an "earlier trial date," did not warrant a mistrial. Accordingly, we conclude that the trial court did not abuse its discretion by denying appellant's motion for mistrial.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**