*Marcus Jamal Lindsey v. State*
Case No. 2704, September Term 2016
Opinion by Shaw Geter, J.

**HEADNOTES:**

***Marcus Jamal Lindsey v. State of Maryland*, No. 2704, September Term 2016, Opinion by Shaw Geter, J.**

1. **CRIMINAL LAW – WEIGHT AND SUFFICIENCY OF EVIDENCE IN GENERAL**
   In reviewing a challenge to the sufficiency of the evidence, an appellate court does not inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, but merely ascertains whether there is any relevant evidence, properly before the jury, legally sufficient to sustain a conviction.

2. **CRIMINAL LAW – WEIGHT AND SUFFICIENCY OF EVIDENCE IN GENERAL**
   There was sufficient evidence to support defendant's conviction for human trafficking under the "placing" or "harboring" modality; defendant acknowledged that he brought victim to the hotel "for his reason" and that victim engaged in prostitution at hotel, witness testified that she heard a struggle inside hotel room and victim screaming for defendant to leave her alone, photographs of hotel room showed evidence of prostitution, and defendant's email account was used for victim's online escort advertisement.

3. **CRIMINAL LAW – CREDIBILITY OF WITNESSES**
   Resolving conflicts in the evidence and weighing the credibility of witnesses are matters for the fact finder, and in this regard, the jury is free to disregard defendant's denials or uncontradicted explanation of events.

4. **CRIMINAL LAW – AUTHORITY OR DISCRETION OF COURT**
   In response to a question from a deliberating jury, trial court did not abuse its discretion in providing response that fairly described the dates, as set forth in the indictment, on which crime was alleged to have occurred.

5. **CRIMINAL LAW – ADMISSION OF WHOLE CONVERSATION, OR INSTRUMENT BECAUSE OF ADMISSION OF PART OR REFERENCE THERETO**
   Trial court did not abuse its discretion in refusing to admit, under doctrine of verbal completeness, self-serving statements from recorded jail conversations

between defendant and victim purporting to explain earlier statements made by defendant during recorded jail conversations introduced by the State indicating that he was trying to keep victim from returning to the State. Md. Rule 5-106.

6. **CRIMINAL LAW – EVIDENCE FOR PURPOSE OF TESTING, SUSTAINING, OR IMPEACHING CREDIBILITY OR CHARACTER OF WITNESSES AND OTHERS**
Evidence of an alleged crime victim's pertinent trait of character may be admissible if relevant to a contested issue at trial. Md. Rule 5-404(a)(2)(B).

7. **CRIMINAL LAW – EVIDENCE FOR PURPOSE OF TESTING, SUSTAINING, OR IMPEACHING CREDIBILITY OR CHARACTER OF WITNESSES AND OTHERS**
Trial court did not err in excluding character evidence that victim engaged in prostitution subsequent to the date on which crime was alleged to have occurred, as such evidence was not relevant to determination of issue of whether defendant had forced victim to prostitute or placed her in hotel for prostitution on date that crime was alleged to have occurred.

8. **CRIMINAL LAW – TIME FOR, AND FORM OF, OBJECTION**
For purposes of rule stating that an objection to a jury instruction must be made promptly after the court instructs the jury, party who indicated that he had no objection immediately following instruction, but who objected to the instruction before trial resumed, met objective of the preservation requirement by providing court with an opportunity to consider and correct the instruction before parties began their closing arguments. Md. Rule 4-325(e).

9. **CRIMINAL LAW – FAILURE TO INSTRUCT**
Trial court did not abuse its discretion in declining to give defendant's proposed instruction on human trafficking, where no pattern instruction was available at the time of trial, instruction given closely tracked language of the statute, included all elements of the offenses, and instructions as a whole adequately informed jury that the State was required to prove each element of each offense beyond a reasonable doubt. Md. Rule 4-325(c).

10. **CRIMINAL LAW – FAILURE TO INSTRUCT**
Trial court did not abuse its discretion in declining defendant's request to define the terms, "place," "harbor," "prostitution," and "knowingly" where terms' meanings were implicit and clear and required no further definition.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2704

September Term, 2016

_____

MARCUS JAMAL LINDSEY

v.

STATE OF MARYLAND

_____

Leahy,
Reed,
Shaw Geter,

JJ.

_____

Opinion by Shaw Geter, J.

_____

Filed: January 2, 2018

Appellant, Marcus Jamal Lindsey, was convicted by a jury in the Circuit Court for Montgomery County of second-degree assault and two counts of human trafficking. The court sentenced appellant to twenty years in prison for one count of human trafficking, and to concurrent ten-year sentences on the remaining counts. Appellant presents the following questions for our review, the first of which we have rephrased:

1. Was the evidence sufficient to sustain appellant's conviction for human trafficking for placing or causing another to be placed in the hotel for prostitution?[1]

2. Did the circuit court abuse its discretion by instructing the jury, in response to a jury note, that one count of human trafficking related to alleged conduct "on or about March 3, 2016," rather than "*on* March 3, 2016?"

3. Did the circuit court abuse its discretion in refusing to allow the defense to play recordings of jail telephone calls involving [appellant]?

4. Did the circuit court err in barring the defense from introducing evidence that the woman whom appellant allegedly forced into prostitution was engaging in prostitution while appellant was in jail?

5. Did the circuit court abuse its discretion by failing to clearly delineate the elements of human trafficking in the jury instructions?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

---

[1] Appellant phrased the first question as: "Did the State fail to prove beyond a reasonable doubt that [appellant] placed or caused another to be placed in a hotel room for prostitution?" As set forth below, this Court does not weigh the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, but rather, determines whether there is legally sufficient evidence to sustain appellant's conviction. *See Morgan v. State*, 134 Md. App. 113, 126 (2000).

## FACTUAL BACKGROUND

The State alleged that appellant took S.S.[2] to a hotel room in Rockville, attempted to force her to have sex with someone, and struck her in the face. S.S. did not testify. The defense's theory of the case was that S.S. was appellant's girlfriend, and that she prostituted against his wishes. With respect to the second-degree assault charge, appellant admitted that he hit S.S. in the face during an argument in the hotel room, but claimed that he did so in self-defense.

Solange Kpela, a housekeeper at the Radisson hotel in Rockville, testified that on March 3, 2016, she was cleaning the hallway of the second floor of the hotel when she heard a man and woman arguing and "struggling" inside room 201. Ms. Kpela explained:

> It sound – normally when you come in the hotel, what caught my attention, that part is to have fun, but it was something like struggling. The male was saying, who are you going to talk to. The lady was screaming, get away from me, you lied to me.

> \*     \*     \*

> It was like, you are a hook – like this embarrasses me – you are a hook, you deserve it, who are you going to talk to. And it was back and forth. The lady was screaming, leave me alone, get away from me, stuff like that.

Ms. Kpela's first instinct was to get help for the woman. Before going to the front desk to report the incident, however, she decided to first record the argument by using her cell phone. The cell phone recording was played for the jury and admitted into evidence. Sounds of a struggle can be heard in the recording, and a female voice saying, "Marcus,

---

[2] We shall refer to the victim as "S.S." in order to protect her privacy.

stop it. No, no, no. No. No," and "He didn't mean anything."

Sandra Liuzzi, the catering sales manager at the Radisson, testified that she was at the front desk of the hotel on March 3, 2016, when a female guest approached her appearing "very frightened," "crying," and "extremely upset." Ms. Liuzzi tried to calm the guest down so that she could figure out what the problem was and get her help if she needed it. According to Ms. Liuzzi, the guest stated that "someone had hurt her," "assaulted her in some way," and that "someone was trying to make her have sex with someone." As Ms. Liuzzi was picking up the phone to call 911, the guest said, "oh my god…there he is." The man then began to approach them, but once he noticed that Ms. Liuzzi was making a phone call, he walked away. During this time, Ms. Kpela also approached Ms. Liuzzi at the front desk appearing very upset and insistent that she needed to speak with Ms. Liuzzi.

Ms. Liuzzi called 911, and the 911 recording was played for the jury and admitted into evidence. In the call, Ms. Liuzzi stated to the dispatcher that a guest had been "beaten up" by "[appellant]." On cross-examination, Ms. Liuzzi acknowledged that she did not state to the 911 dispatcher that the guest had told her that someone had forced the guest to have sex, because, she explained, her goal was "just to get the police there as quickly as possible."

Rockville City Police Officer Tibbs[3] responded to the Radisson. Upon arrival, he encountered S.S., whom he observed to have a bruise on her right eye. S.S. advised Officer Tibbs that she had no identification, no wallet, and no cell phone.

---

[3] Officer Tibbs' first name does not appear in the transcript.

3

Montgomery County Police Detective Molly Stone of the Vice and Intelligence Unit, the lead investigator assigned to the case, arrived at the Radisson and encountered S.S., whom she observed had a "swollen mark" under her right eye and redness on the left side of her face. The hotel folio records indicated that Kelly Nost had checked-in to the hotel and signed for the room by providing her address and phone number. The second page of the hotel folio record contained a photograph of a driver's license for Cicley Ann Lindsey-Asmani ("Ms. Asmani"), indicating that she was the individual who had rented the room. Ms. Asmani is appellant's mother.

After speaking with S.S. for approximately one hour, Detective Stone accompanied her to room 201, where S.S. retrieved some clothing items and commented that appellant had taken other things from the room. Police photographs of room 201 were introduced into evidence showing boxes of condoms, condom wrappers, condoms in the nightstand drawer, a large piece of braided hair on the floor, a cell phone in a box, a sheet of paper with a list of phone numbers, and a Verizon phone bill addressed to Ms. Asmani.

S.S. directed Detective Stone to the website, "Backpage.com," where the detective located escort advertisements for S.S. and Ms. Nost by using the phone number that Ms. Nost had provided to the hotel at check-in. Print-outs of those ads were introduced into evidence. On cross-examination, Detective Stone testified that the escort ads for S.S. and Ms. Nost were associated with the e-mail addresses, "braman5, or something along those lines," and "betterplayitsmart@icloud.com."

On April 1, 2016, appellant was arrested at an extended stay hotel in Germantown, where he had been staying with S.S. Montgomery County Police Detective Nicholas

Jerman of the Vice and Intelligence Unit interviewed S.S. at the hotel. Detective Jerman testified that S.S. informed him that she had posted her own ads on Backpage.com using the e-mails, "bramanfifthfloor" and "betterplayitsmart@icloud.com." According to the detective, when he asked S.S. if appellant had told her to post the ads, she replied, "He never forces me to do anything. He don't even want me to do this, so I mean I can take the blame." Detective Jerman further testified that it is common for prostitutes to take the blame for their pimps.

S.S.'s mother testified that she and her husband adopted S.S. when she was three-years-old, and that S.S. had not lived with them since she was sixteen-years-old. She testified that she had previously assisted with her daughter's placement in a group home, but that she had not spoken to her daughter in over three months, and that she did not know her daughter's current whereabouts.

Ms. Asmani and Nicole Lindsey, appellant's sister, each testified that S.S. and appellant had been dating, and that S.S. was the cousin of appellant's children's mother. Ms. Asmani testified that she rented the room at the Radisson so that appellant could be close to the hospital where his son was being delivered because appellant was homeless and he needed a place to so that "he can get cleaned up, go visit his son." Ms. Asmani did not visit the hotel room that she rented for appellant.

Following appellant's arrest in this case, Ms. Asmani continued to communicate with S.S., and allowed S.S. to live with her for approximately one week. The defense introduced copies of text messages between Ms. Asmani and S.S. in which Ms. Asmani asked S.S. why she lied to police by telling them that appellant had forced her to prostitute.

5

S.S. responded by text message, saying that she had acted "out of the heat" of a "moment of anger" because she was mad that Ms. Nost was there and that she was "influencing him too much."

Appellant testified that he brought S.S. to the Radisson hotel with him to be near the hospital where his son was being delivered. Appellant stated that S.S. was his girlfriend, that she was a prostitute, and that he had brought her to the hotel for "his reason." He stated that Ms. Nost was also a prostitute, and that S.S. had invited her to the hotel room, and that although he knew that both women had engaged in prostitution in the hotel room, he was not present in the room when they did so. According to appellant, the physical altercation between him and S.S. at the Radisson on March 3, 2016, was precipitated by a sexual encounter on the previous day involving himself, S.S., and Ms. Nost, during which S.S. was unhappy that he was not showing her enough attention. Appellant admitted that on March 3, 2016, he hit S.S. in the face after she had "yanked" his hair. Appellant acknowledged that he grabbed S.S. to keep her from leaving the room, but stated that it was not because he was forcing her to engage in prostitution. He explained that he was trying to keep her from calling the police because he had outstanding warrants for a probation violation, and he feared that he would be arrested if the police were called.

On cross-examination, appellant acknowledged that in the weeks leading up to March 3, 2016, he and S.S. stayed at ten different hotels in the Washington, D.C. and Baltimore area, for one or two nights on average. Appellant explained that he did this because he was homeless. Appellant had received a tax refund that he used to stay in these hotels, and he booked the hotels online to take advantage of discounted prices. In response

6

to the prosecutor's question as to whether S.S.'s escort ad was posted on Backpage.com during the two-week time period prior to March 3, 2016, appellant responded that it was not posted the "entire time," explaining:

> [W]hen my tax money had run out, that's when she said we start sleeping in stairwells, and stuff like that. So, she was like she's not going to live like that, and she, I guess she just started [prostituting].

Appellant was aware that S.S. was posted as an escort on Backpage.com on March 3, 2016. Appellant admitted that "betterplayitsmart@icloud.com" is his e-mail account, but stated that S.S. had access to his e-mail account because their electronic devices were linked to the same iCloud account.

Appellant was aware that S.S. was engaged in prostitution in the Radisson hotel room. He testified that he did not make S.S. prostitute, he did not receive any money or financial benefit from her prostitution, and he did not place her in the Radisson for prostitution. He stated that he "didn't like her doing it," and "didn't want her doing it at all" because he "didn't want to be involved with it."

We shall provide additional facts as necessitated by our discussion of the issues presented.

## DISCUSSION

## I.

Appellant contends that the evidence was insufficient to sustain his conviction for human trafficking by "knowingly harboring, taking, placing or causing another to be placed in any place for prostitution" under Maryland Code, Section 11-303(a)(1)(ii) of the Criminal Law Article ("C.L."). Specifically, appellant claims that the evidence failed to

7

show that he "harbored" S.S. in the hotel for the purpose of prostitution. According to appellant, the evidence "overwhelmingly established" that S.S. was at the hotel "voluntarily, and for purposes unrelated to prostitution." The State responds that the evidence was sufficient to show that appellant brought S.S. to the hotel room for the purpose of prostitution. Appellant does not challenge the sufficiency of the evidence as to his convictions for human trafficking by force under CL § 11-303(b)(2) and for second-degree assault.

We review a challenge to the sufficiency of the evidence to determine "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Grimm v. State*, 447 Md. 482, 494-95 (2016) (quoting *Cox v. State*, 421 Md. 630, 656-57 (2011)); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In applying that test, "[w]e defer to the fact finder's opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence." *Neal v. State*, 191 Md. App. 297, 314 (2010) (citation and internal quotation marks omitted). And, importantly, we defer to any reasonable inferences a jury could have drawn in reaching its verdict, and determine whether there is sufficient evidence to support those inferences. *State v. Mayers*, 417 Md. 449, 466 (2010).

This Court does not "inquire into and measure the weight of the evidence to ascertain whether the State has proved its case beyond a reasonable doubt, but merely ascertains whether there is any relevant evidence, properly before the jury, legally sufficient to sustain a conviction." *Morgan v. State*, 134 Md. App. 113, 126 (2000)

8

(quoting *State v. Devers*, 260 Md. 360, 371 (1971)). Importantly, "it is not the function or duty of the appellate court to undertake a review of the record that would amount to, in essence, a retrial of the case." *Mayers*, 417 Md. at 466 (quoting *State v. Albrecht*, 336 Md. 475, 478 (1994)).

Appellant challenges his conviction for human trafficking under CL § 11-303(a)(1)(ii) which states that "[a] person may not knowingly…place, cause to be placed, or harbor another in any place for prostitution[.]" "Prostitution" is defined as "the performance of a sexual act, sexual contact, or vaginal intercourse for hire." C.L. § 11-301(c).

Appellant acknowledged that he "brought [S.S.]" to the hotel "for his reason," and that S.S. was engaged in prostitution in the hotel room. Ms. Kpela testified that she heard a woman screaming in room 201 "leave me alone, get away from me," and the response, "you deserve it, who are you going to talk to?" Immediately thereafter, S.S. was observed to be visibly shaken as she sought help from the staff in the hotel lobby. Photographs of the hotel room showed boxes of condoms, condoms in the nightstand, condom wrappers on the floor, and a list of phone numbers.

The documentary evidence showed that although Ms. Asmani rented the hotel room, it was Ms. Nost who checked-in to the hotel for appellant. Detective Stone's investigation revealed that the phone number that Ms. Nost provided at check-in was the same phone number associated with S.S.'s Backpage.com account advertising "escort" or prostitution services. Moreover, S.S.'s Backpage.com account was connected to the email address, "betterplayitsmart@icloud.com," which e-mail appellant acknowledged to be his.

9

Appellant stated that he was aware that S.S. had posted an escort ad on Backpage.com on March 3, 2016.

Appellant's explanation for his presence at the Radisson, and his denial of any involvement in S.S.'s prostitution during his stay there, was for the jury to consider and weigh against the other evidence in the case. As we have stated before, "we must give great deference to the trier of facts' opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence[.]" *Pinkney v. State*, 151 Md. App. 311, 329 (2003); *see also Kamara v. State*, 184 Md. App. 59, 79 (2009) (quoting *Draco v. State*, 46 Md. App. 622, 628 (1980) ("The credibility of the witnesses at trial is of course for the trier of fact[, and] the trier of fact is under no obligation to believe even uncontradicted explanations or denials of an accused")); *see also Turner v. State*, 192 Md. App. 45, 81 (2010) (citation omitted) (observing that the jury is "free to discount or disregard totally [a defendant's] account of the incident").

Based upon the verdicts in this case, it is apparent that the jury did not credit appellant's testimony. We conclude that the evidence was sufficient to sustain appellant's conviction for human trafficking by placing or harboring S.S. in the hotel for prostitution.

**II.**

During its deliberations, the jury sent the trial judge a note asking:

With regards to the Human Trafficking – Force charge, is this charge limited to – on the day of the incident? Or, is it over the time of [appellant] and [S.S.]'s relation?

In response to the jury note, the following discussion ensued among the parties and the court:

COURT: [T]he answer is that [appellant] is charged with, all three charges are alleged to have occurred on March 3rd, 2016. So I'm inclined to respond to this question by advising the jury that [appellant] is alleged to have committed this offense on March 3rd, 2016.

[PROSECUTOR]: Would the court be inclined to track the language of the indictment that says on or about March 3rd, 2016?

THE COURT: All right.

[DEFENSE COUNSEL]: May I be heard on that, Your Honor?

COURT: Sure.

[DEFENSE COUNSEL]: This case was presented to the jury on, and it's identified on or about is a way of just in case it's not a different day. That the government wanted to, had the state wanted to charge a continuing course of conduct they could have charged between X date and Y date. That's often done in indictments, Your Honor. That wasn't done here. On or about means – if we made a mistake, if it happened on the 2nd, then it's on or about. This case was presented to the jury as if the events happened on March 3rd. The whole case was pitched as the March 3rd. So, Your Honor, we'd request that Your Honor go with your initial instinct, that you tell the jury that the date is March 3rd. Thank you.

THE COURT: All right. The response that I'm sending back is, **["A]nswer, it is alleged in count one that [appellant] committed this offense on or about March 3rd, 2016.["]**

[DEFENSE COUNSEL]: Your Honor, my objection be preserved today.

THE COURT: It is on the record.

Appellant contends that the trial court abused its discretion by failing to instruct the jury that the first count related to alleged conduct *on* March 3rd, 2016. He argues that by responding to the jury note that the count related to conduct "on or about" March 3, 2016, the court "implicitly amended the indictment" and "invited the jury to convict [him] of human trafficking that may or may not have occurred in that broader, uncharged time period."

11

The State argues that the court's response to the jury question was a proper exercise of discretion. The State contends that because the evidence showed that appellant brought S.S. to the Radisson sometime between February 29 and March 3, 2016, the court's response fairly described the dates on which the crime was alleged to occur, as set forth in the indictment.

Maryland Rule 4-325(a) requires the court to instruct the jury at the close of the evidence and permits the court to supplement those instructions at a later time, "when appropriate." The decision of whether to supplement the instructions, including an instruction given in response to a jury question, is within the discretion of the trial court and will not be disturbed except on a clear showing of an abuse of discretion. *Appraicio v. State*, 431 Md. 42, 51 (2013) (citations omitted). "[T]rial courts have a duty to answer, as directly as possible, the questions posed by jurors." *Id*. at 53.

In the present case, the evidence showed that the room at the Radisson was rented for appellant from February 29, 2016 until March 3, 2016. The prosecutor included this timeframe in his cross-examination of appellant, when he asked, "*on or about* March 3rd, 2016, did you place or cause to be placed [S.S.] in a place at the Radisson Hotel for prostitution?" Because the evidence showed that appellant took S.S. to the Radisson at some unspecified time between February 29 and March 3, 2016, the court's response to the jury question fairly covered those dates on which the crime, as described in the indictment, was alleged to have occurred.

We are unpersuaded by appellant's argument that the court's response to the jury question permitted the jury to convict him for uncharged crimes on dates other than March

3, 2016, for which appellant was provided no opportunity to defend. *See Williams v. State*, 302 Md. 787, 791 (1985) ("Every criminal charge must characterize the crime, and provide the defendant with such a description of the particular act alleged to have been committed so as to inform him of the specific conduct with which he is charged, thereby enabling him to defend against the accusation[.]"). Appellant was on notice from the indictment that the criminal offense of human trafficking by force was alleged to have occurred "on or about March 3rd, 2016" and the evidence adduced at trial was consistent with the facts as charged. We perceive no abuse of discretion in the trial court's response to the jury note that the first count related to alleged conduct "on or about March 3rd, 2016."

**III.**

Appellant contends that the trial court abused its discretion in refusing to allow him to play excerpts from recorded jail telephone calls in response to evidence of recorded jail calls introduced by the State. Appellant maintains that the doctrine of verbal completeness requires that he be permitted to play excerpts of telephone calls which were "part of one, ongoing conversation" that were "necessary to provide the proper context" for the recordings introduced by the State. Alternatively, appellant contends that the recordings were admissible to impeach S.S.'s statement that appellant had forced her to have sex with someone at the hotel.

The State responds that the excerpts of the recordings that appellant sought to admit were not admissible under the doctrine of verbal completeness because they were not a continuation of the calls that the State offered. The State further contends that the

13

statements were not inconsistent with S.S.'s earlier statements, and that any error in excluding the excerpts of the calls was harmless beyond a reasonable doubt because there was evidence before the jury that S.S. had made similar inconsistent remarks to other witnesses.

The State introduced the following three excerpts from appellant's recorded phone conversations while he was in jail. The first call from April 7, 2016, involved an unidentified male who told appellant the following:

> [S]he's not going to be coming back down here, and, and, and, and, not go there, so you should be good. I mean they should, they should be able to, you know, reduce everything, and just finish up your probation or whatever, and then get, get out of there.

During an April 11, 2016 call, Ms. Mitchell, the mother of appellant's children and S.S.'s cousin, told appellant, "[S]he's not coming down here," and, "[S]he doesn't even know your court dates, nothing." Also on April 11, 2016, appellant stated the following in a conversation with S.S.:

> Don't don't be saying where you at, though, just say, just talk, talk codes… Don't be doing all kinds of shit running around, running off with people and shit. I want to know where you at.

In response to the State's evidence of the jail calls, defense counsel argued that he was entitled to play the following portions of three additional recorded telephone calls under the doctrine of verbal completeness:

> An April 24, 2016 call, during which S.S. stated to appellant, "Baby, I miss you so much. Oh my God. Oh my God. Wait all I do is talk about you;"

> An April 28, 2016 call during which appellant told S.S., "I'm the, you know I'm the one that told you to come back down here;" and

14

A July 5, 2016 call during which S.S. told appellant that she was trying to get a house "for us," and appellant commended her for "moving up the right way" trying to get a job as a cook and go to school, and the two professed their love for one another.

Defense counsel argued to the court in support of the admission of the three jail calls

as follows:

> [DEFENSE COUNSEL]: This is a series of ongoing communications between [appellant] and his girlfriend, at the time, who are communicating about a variety of subject matter[s], including whether or not she will be coming back into the state to join him. This conversation is ongoing across several months, and goes well into July – through July 5th at least there's discussion of whether she'll be coming back or not.
>
> THE COURT: So, how does a call on April 24, April 28, and July 5 apply to a call of April 11 that would make it relevant to the doctrine of completeness? Usually, it's something that occurs right at the same time. I mean I've seen it in deposition testimony, in prior testimony you want the rest of the statement read to put that statement into context. How does something on April 24, April 2[8] and July 5th relate to something that was said on April 11th?
>
> [DEFENSE COUNSEL]: Your Honor, we believe the Government's proffering these calls to show or to imply that [appellant] did not want [S.S.] to come back into the area and there are clear implications that that's not the case. Over the course of the conversations with his girlfriend, there were discussions, and there were discussions both ways. She was coming, or she wasn't coming, it was back and forth. It was a continuing, ongoing long-distance conversation in this relationship between [appellant] and, importantly, the complaining witness who's not present.
>
> THE COURT: What's the State's position?
>
> [PROSECUTOR]: Self-serving hearsay, Your Honor. Under [*Conyers v. State*, 345 Md. 525, 541 (1997)], the doctrine of verbal completeness does not allow evidence that's otherwise inadmissible as hearsay to become admissible solely because it's derived from [] even if there is [a] single writing or a single conversation.
>
> There are jail calls that occurred weeks, if not months later interspersed with other conversations with other individuals, as well as other conversations

15

with the same individual. The doctrine of completeness just simply doesn't apply; they're attempting to bootstrap favorable statements that [appellant] made at another time into evidence offered for its truth, and that's not what the doctrine envisions.

The court rejected appellant's request to admit the April 24 – July 11, 2016 calls, finding as follows:

Well, the State's seeking to introduce statements made by [appellant], on April 11, and he, clearly is the one making statements.

He's responding to statements made by [S.S.]. The statements, on April 24, April 28 and July 5, made by [S.S.] and some comments by the defendant, **I do not find that they are statements that fall within the doctrine of completeness for admissibility purposes.**

In addition, I do not find that these statements are admissible under any theory to allow them to come into evidence. So, I'm going to deny the Defense request to introduce the statements of April 24, April 28, and July 5th.

"The common law doctrine of verbal completeness 'allows a party to respond to the admission, by an opponent, of part of a writing or conversation, by admitting the remainder of that writing or conversation.'" *Rutherford v. State*, 160 Md. App. 311, 320 (2004) (quoting *Conyers v. State*, 345 Md. 525, 541 (1997)). This doctrine is codified in Maryland Rule 5-106, which states:

When part or all of a writing or recorded statement is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

As the Court of Appeals noted in *Conyers*, "Maryland Rule 5-106 does not change the requirements for admissibility under the common law doctrine or allow the admission of otherwise inadmissible evidence, except to the extent that it is necessary, in fairness, to

16

explain what the opposing party has elicited." 345 Md. at 541 (citation and internal quotation marks omitted). The Court then identified the three requirements for admissibility under the doctrine of completeness:

(a) No utterance irrelevant to the issue is receivable;

(b) No more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is receivable;

(c) The remainder thus received merely aids in the construction of the utterance as a whole, and is not in itself testimony.

*Id.* at 541-42 (citation omitted). Additionally, the doctrine of verbal completeness is subject to the rules of evidence: the utterance must be relevant, its prejudice must not outweigh its probative value, and the doctrine does not allow into evidence an utterance that is otherwise inadmissible hearsay to become admissible solely because it is derived from a single writing or conversation. *Id.* at 542, 545; *see also Rutherford*, 160 Md. App. at 320. Generally, the statements sought to be admitted under the doctrine of verbal completeness are part of a single writing or conversation. The Court of Appeals has recognized, however, that "[i]n an appropriate circumstance [] the doctrine would permit the admission of a separate writing or conversation to place in context a previously-admitted writing or conversation." *Conyers*, 345 Md. at 542 (emphasis omitted).

In *Conyers*, a State's witness testified that appellant owned two handguns. *Id.* at 543. The defense sought to cross-examine the witness about a conversation that she had with appellant in which he told her that he had given the guns to someone else prior to the murder. *Id.* Defense counsel argued that the exculpatory hearsay statement was admissible

17

under the doctrine of verbal completeness to balance the inculpatory hearsay statements offered by the State during the witness' direct examination. *Id.* at 540. The Court of Appeals rejected the defense's argument and held that the trial court had not abused its discretion in refusing to admit the separate hearsay statement under the doctrine of verbal completeness. *Id*. at 543. The Court explained that because the testimony regarding Conyers' first statement to the witness was introduced by the prosecution as an admission, it was admissible under Rule 5-803(a)(1), which provides a hearsay exception for a statement by a party opponent that is offered against the party. *Id*. at 544. When Conyers sought to introduce his own statement, however, it was hearsay, and "[s]uch statements are inherently suspect as being self-serving." *Id*. at 544-45 (citation and internal quotation marks omitted).

In the present case, as in *Conyers*, the portions of the phone calls that appellant sought to introduce consisted of unrelated, subsequent conversations that did not explain or correct any of appellant's earlier statements in the calls introduced by the State. *See Newman v. State,* 65 Md. App. 85, 96 (1985) (citations and internal quotation marks omitted) ("[T]o be admissible, the remainder must not only relate to the subject matter, but must also tend to explain and shed light on the meaning of the part already received or to correct a prejudicially misleading impression left by the introduction of misleading evidence.").

With respect to the call of April 28, in which appellant stated that he was the one who told S.S. to "come back down here," that statement in no way clarified or explained the meaning of his comments in the April 7 and April 11 calls, which indicated that,

18

approximately two to three weeks earlier, appellant did not want S.S. to come back to the State. Indeed, it appears that by April 28th, appellant had changed his mind about keeping S.S. out of State. As such, his later exculpatory statements constituted inadmissible, self-serving hearsay. We are persuaded that the trial court did not abuse its discretion in denying appellant's request to introduce excerpts from the April 24, April 28, and July 5, 2016 recorded jail calls under the doctrine of verbal completeness.

Appellant argues in the alternative that the April 24, April 28, and July 5 phone calls were admissible to impeach S.S. because they were inconsistent with her statement to Ms. Liuzzi that appellant had tried to force her to have sex with someone. The State argues that appellant's argument is unpreserved because at trial, appellant argued generally that the statements were prior inconsistent statements, but failed to specify that they were inconsistent with her statement to Ms. Liuzzi that appellant had tried to force her to have sex with someone.

Ordinarily, this Court will not consider "any issue 'unless it plainly appears by the record to have been raised in or decided by the trial court.'" *King v. State*, 434 Md. 472, 479 (2013) (quoting Md. Rule 8-131(a)). By addressing only issues "'raised in or decided by the trial court,' the Rule serves to prevent the unfairness that could arise when a party raises an issue for the first time on appeal, thus depriving the opposing party from admitting evidence relating to that issue at trial." *Wilkerson v. State*, 420 Md. 573, 597 (2011) (quoting Md. Rule 8-131 (a)).

At trial, defense counsel argued that the phone calls were being offered to show that "[h]er statements [were] inconsistent with other statements that she previously made."

19

Because appellant's argument on appeal is substantially similar to the argument that he made at trial, we conclude that the issue was raised in and decided by the trial court, and is therefore preserved for review.

Turning to the merits, we perceive no abuse of discretion in the trial court's determination that the statements were not admissible as prior inconsistent statements. S.S.'s statements in the April 24, April 28, and July 5, 2016 phone calls in which she professed her love to appellant were not necessarily inconsistent with her earlier statement to Ms. Liuzzi that appellant had tried to force her to have sex with someone. S.S. could still love appellant despite the fact that he forced her to prostitute. Were we to determine that S.S.'s statements in the jail calls were erroneously excluded, we are persuaded that the exclusion of the statements in this case was harmless beyond a reasonable doubt. *See Dionas v. State*, 436 Md. 97, 108 (2013) (quoting *Dorsey v. State*, 276 Md. 638, 659 (1976)) (stating that an error is harmless when a reviewing court is "satisfied that there is no reasonable possibility that the evidence complained of - whether erroneously admitted or excluded - may have contributed to the rendition of the guilty verdict"); *accord Potts v. State*, 231 Md. App. 398, 408 (2016).

S.S.'s statement to Ms. Liuzzi that appellant had tried to force her to have sex with someone was impeached by Detective Jerman's testimony, in which he stated that S.S. had informed him that appellant "never forces [her] to do anything." Moreover, S.S.'s statement that appellant forced her to prostitute was inconsistent with S.S.'s text message to Ms. Asmani stating that she had lied to the police by telling them that appellant had forced her to prostitute because she had acted "out of the heat" of a "moment of anger."

Because S.S.'s exculpatory statements regarding appellant were introduced through other witnesses, the jail calls were cumulative of other evidence on the subject. Accordingly, the exclusion of the jail calls would not affect the outcome of the case. *See Snyder v. State*, 104 Md. App. 533, 564 (1995) (determining that although trial court should have excluded hearsay testimony, the admission of the testimony "[was] not important" because it "merely echoe[d]" other similar testimony to which appellant failed to object) (citing *Changing Point, Inc. v. Maryland Health Resources Planning Comm'n,* 87 Md. App. 150, 172 (1991) (holding that the issue of whether testimony should have been excluded was "not important" because the testimony was merely cumulative)). In any event, even if the court erred by excluding the April 24, April 28, and July 5, 2016 jail calls, any error in the exclusion of that evidence was harmless beyond a reasonable doubt.

**IV.**

Appellant contends that the trial court abused its discretion in prohibiting the defense from introducing evidence of S.S.'s alleged subsequent arrest for prostitution because it was "relevant to the ultimate question of whether [appellant] was forcing his girlfriend to have sex with another person or whether she was engaging in prostitution independently." Appellant further contends that the trial court's exclusion of the evidence deprived him of his right to present a complete defense.

During cross-examination of S.S.'s mother, appellant sought to establish that S.S. had been arrested for prostitution subsequent to the March 3, 2016 incident. The State objected to the question, and the court sustained the objection. At the ensuing bench conference, defense counsel asserted that evidence of S.S.'s arrest for prostitution was

21

relevant because it tended to prove that she "was a prostitute on her own" because appellant was incarcerated at the time of the alleged arrest. Defense counsel further argued that the evidence was admissible pursuant to Maryland Rule 5-404(a)(2)(B), which provides:

> Character of Victim. Subject to the limitations in rule 5-412,[4] an accused may offer evidence of an alleged crime victim's pertinent trait of character. If the evidence is admitted, the prosecutor may offer evidence to rebut it.

The State responded that the evidence was not admissible because it was not relevant:

> There's no issue with respect to whether or not she was a prostitute…This is impermissible character smearing. I'd also note that, whether or not she was prostituting at the direction of another individual, with a pimp, or not with a pimp. And that's really what's at issue here, not this character attack, and other irrelevant dates of all prostitution.

The trial court determined that S.S.'s alleged arrest for prostitution was not "relevant with respect to character," and refused to permit the defense to elicit evidence on the subject.

Generally, "evidence of a person's character trait is not admissible to prove that the person acted in accordance with the character or trait on a particular occasion." Rule 5-404(a)(1). But "evidence of an alleged crime victim's pertinent trait of character" may be admissible when that trait is relevant to a contested issue at trial. *See* Rule 5-404(a)(2)(B). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 5-401. As a general rule, "all relevant evidence is

---

[4] Rule 5-412 governs the admissibility of a victim's sexual history in cases involving charges of sex offense, sexual abuse of a minor, or sexual abuse of a vulnerable adult.

admissible," and "[e]vidence that is not relevant is not admissible." Rule 5-402. "In reviewing a trial court's determination that evidence is relevant and admissible, we apply the de novo standard of review to the court's conclusion of law that the evidence at issue is or is not of consequence to the determination of the action." *Wagner v. State*, 213 Md. App. 419, 453 (2013) (citation and internal quotation marks omitted).

We discern no error in the trial court's conclusion that the proffered evidence relating to S.S.'s conduct subsequent to March 3, 2016 was not relevant. Evidence that S.S. may have been arrested for prostitution months after the March 3, 2016 incident was not relevant to the determination of whether appellant had forced her to prostitute or placed her in the hotel for prostitution on March 3, 2016. Nor did the court's ruling deprive appellant of the right to present an effective defense. By this time, the jury had already heard multiple references to the fact that S.S. was a prostitute. Because appellant's proffered evidence of S.S.'s character for prostitution was cumulative of other evidence offered on that point, the exclusion of that evidence did not deprive appellant of his constitutional right to present a complete defense.

Moreover, even if we were to determine that the evidence of S.S.'s alleged subsequent arrest should have been admitted, we are persuaded that the exclusion of that evidence in this case was harmless beyond a reasonable doubt. *See Dove v. State*, 415 Md. 727, 743-44 (2010) (citation and internal quotation marks omitted) ("In considering whether an error was harmless, we also consider whether the evidence presented in error was cumulative evidence. Evidence is cumulative when, beyond a reasonable doubt, we are convinced that there was sufficient evidence, independent of the [evidence] complained

23

of, to support the appellant['s] conviction."). Consequently, because any error in excluding the evidence was harmless beyond a reasonable doubt, appellant was not denied a fair trial by the exclusion of the evidence.

## V.

Appellant argues that the trial court abused its discretion in failing to "clearly delineate" the elements of human trafficking in the jury instructions. The State responds that appellant failed to preserve this claim for review because defense counsel did not object after the court provided the human trafficking instructions to the jury, and even if preserved, appellant's claim fails on the merits.

## A.

### Preservation

At the end of the second day of trial, the following colloquy took place regarding the proposed jury instructions:

> THE COURT: Any comments on the proposed instructions?
>
> [DEFENSE COUNSEL]: Yes. The proposed instructions from the State don't break out the elements of the offenses. Even the offenses that are left [are] also combined as one. And we believe, particularly in light of the instruction that they have to find guilt beyond a reasonable doubt with respect to each and every element of the offense[,] [n]ot breaking out the elements is prejudicial to the defendant, and we'd object to those.
>
> Our version, Your Honor, contains – there are no pattern instructions for the human trafficking, as Your Honor knows, we attempted, based on, as you can see in our versions, what the elements of the offense are, and attempted to give definition for those words that are not words of common understanding, or even if they are words that the courts have previously defined.

*       *       *

24

THE COURT: All right. Well, I mean it basically says what the statute is, and the words are words that are subject to common interpretation, so I'll leave that as it is.

Appellant had proposed the following instructions regarding the human trafficking counts:

**Human Trafficking – Force – MD Code, Criminal Law § 11-303(b)(2)**

[Appellant] is charged with Human Trafficking – Force. Human trafficking – Force is the knowing taking or detention of another with the intent to use force, threat and coercion to compel the other to perform a sexual act, sexual contact, or vaginal intercourse.

In order to convict [appellant] of human trafficking – force, the State must prove each of the following elements beyond a reasonable doubt:

1. [Appellant] knowingly;

2. took or detained another;

3. that, at the time [appellant] knowingly took or detained another, [appellant] had the intent to use force, threat, and coercion; and

4. [Appellant], at the time he knowingly took or detained another, intended to compel him or her to perform a sexual act, sexual contact, or vaginal intercourse.

"Knowingly" is defined as having knowledge. A defendant acts knowingly if he realized what he was doing, was aware of the nature of his conduct, and did not act through mistake, accident or carelessness, or other innocent reason. The State has the burden of proving knowledge beyond a reasonable doubt. Knowledge can be established from all the surrounding facts and circumstances. "Detain" means to hold or keep, as if in custody.

**Human Trafficking – Place/Cause – MD Code, Criminal Law § 11-303(a)(1)(ii)**

[Appellant] is charged with the crime of Human Trafficking – Take/Cause. Human Trafficking – Take/Cause is the knowing taking or causing of another to be taken to any place for the purpose of prostitution.

25

In order to convict [appellant] of Human Trafficking – Take/Cause, the State must prove each of the following elements beyond a reasonable doubt:

1. that [Appellant] knowingly;

2. placed, caused to be placed, or harbored another in a place; and

3. for the purpose of prostitution.

Here, "to place" means to put in or as if in a particular place or position. To "harbor' means to give shelter or refuge to. Prostitution means the performance of a sexual act, sexual contact, or vaginal intercourse for hire. "Knowingly," as I have told you, is defined as having knowledge. A defendant acts knowingly if he realized what he was doing, was aware of the nature of his conduct, and did not act through mistake, accident, carelessness, or other innocent reason. The State has the burden of proving knowledge beyond a reasonable doubt. Knowledge can be established from all the surrounding facts and circumstances.

The court declined to give appellant's proposed human trafficking jury instruction, instructing the jury on the human trafficking charges as follows:

The defendant is charged with the offense of human trafficking by force, fraud, or coercion. In order to convict the defendant, the State must prove that the defendant did knowingly take or detain [S.S.] with the intent to use force, threat, or coercion to compel [her] to perform a sexual act, sexual contact, or vaginal intercourse.

The defendant is charged with the offense of human trafficking, take cause. In order to convict the defendant, the State must prove that the defendant did place, cause to be placed, or harbor [S.S.] at 3 Research Boulevard, Room 201, for prostitution.

Following the court's instructions to the jury, the court inquired of defense counsel as follows:

THE COURT: And counsel, anything further at this point?

[DEFENSE COUNSEL]: No, Your Honor, subject to what we've said before.

26

THE COURT: Very well. Mr., counsel, if you could just approach for a minute.

(Bench conference follows:)

THE COURT: **I just want to make it clear on the record that you aren't objecting to the instructions that I gave, with the previous arguments that you've made.**

 [DEFENSE COUNSEL]: **Yes. Thank you**.

THE COURT: All right.

(Bench conference concludes.)

Following this conference, the court adjourned for the day. The State contends that, at this point in the proceeding, appellant waived his objection to the jury instructions by expressly acknowledging to the court that he had no objection to the human trafficking instruction as provided to the jury.

On the following morning, however, before the trial resumed, and before the jury was present, defense counsel addressed the court as follows:

[DEFENSE COUNSEL]: Yesterday, Your Honor, we brought up our concern with the instructions on the substantive offenses of human trafficking, that each element wasn't identified, it was just the statute was quoted in full. And as it, and we want to make clear what our objection is.

With respect to the assault, and now with respect to self-defense, the Court breaks out the elements, one, two, three, four. One, two three on the assault, for example. One, two, three, four on self-defense. And –

THE COURT: It's in the Pattern Jury Instructions.

[DEFENSE COUNSEL]: Exactly. And there is no Pattern Jury Instruction for human trafficking. That's what causes the difficulty. We understand that. But again, we want to make clear that our concern is two-fold on that: one, the elements aren't broke up, just as they are.

And if you look at page 2 of the instructions, Your Honor, Your Honor's page two talks about "each of the elements, as I will define them for you." And we think that it's inconsistent with that instruction not to define each of the elements in the human trafficking, as well as not defining the word "knowingly."

Then those are our concerns. And so if Your Honor—

THE COURT: You've made your point.

Objections to jury instructions must comply with Rule 4-325(e) which provides:

> No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly *after the court instructs the jury*, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

(Emphasis added).

In order to properly preserve this issue for appellate review, appellant was required to promptly object following the court's instructions to the jury. *See Stabb v. State*, 423 Md. 454, 464-65 (2011). "The general rule is that the failure to object to a jury instruction at trial results in a waiver of any defects in the instruction, and normally precludes further review of any claim of error relating to the instruction." *Alston v. State*, 414 Md. 92, 111 (2010) (quoting *State v. Rose*, 345 Md. 238, 245 (1997)). "A principal purpose of Rule 4-325(e) 'is to give the trial court an opportunity to correct an inadequate instruction' before the jury begins deliberations." *Alston*, 414 Md. at 111 (quoting *Bowman v. State*, 337 Md. 65, 69 (1994)). "The timing of the objection is important because it should give the trial court an opportunity to correct the instruction in light of a well-founded objection." *Stabb*,

28

423 Md. at 465 (citations omitted). Considerations of fairness and judicial efficiency generally require that all challenges that a party wishes to make to a trial court's ruling, action, or conduct "be presented in the first instance to the trial court so that (1) a proper record can be made with respect to the challenge, and (2) the other parties and the trial judge are given an opportunity to consider and respond to the challenge." *Chaney v. State,* 397 Md. 460, 468 (2007).

Although defense counsel initially indicated at the end of the second day of trial that he was not objecting to the instructions as given, on the following morning, he changed course. Before the jury was brought in, defense counsel specifically objected to the human trafficking jury instructions given by the court. Defense counsel's objection met the objective of the preservation requirement, by providing the prosecution and the court with an opportunity to consider and correct the instruction before the parties began their closing arguments. Because trial proceedings had not yet resumed, the timing of the objection was sufficient to preserve this argument for our review.

**B. Human Trafficking Jury Instructions**

Appellant contends that the trial court abused its discretion in refusing to give "more detailed explanations of human trafficking, because the court's instructions impermissibly posed a very high risk that the jury would misunderstand these crimes and/or fail to ensure that the State proved each and every element of the crimes." In *Jarrett v. State,* 220 Md. App. 571, 583-84 (2014), we set forth the applicable standard of review of a trial court's decision regarding requested jury instructions:

Maryland Rule 4-325(c) provides that "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law[.]" We review "a trial court's refusal or giving of a jury instruction under the abuse of discretion standard." *Stabb v. State,* 423 Md. 454, 465 (2011). The Court of Appeals has explained:

> We consider the following factors when deciding whether a trial court abused its discretion in deciding whether to grant or deny a request for a particular jury instruction: (1) whether the requested instruction was a correct statement of the law; (2) whether it was applicable under the facts of the case; and (3) whether it was fairly covered in the instructions actually given.

*Id.* (citing *Gunning v. State,* 347 Md. 332, 351 (1997)). "The burden is on the complaining party to show both prejudice and error." *Tharp v. State,* 129 Md. App. 319, 329 (1999), *aff'd,* 362 Md. 77 (2000).

Applying these three factors, we conclude that the jury instructions were a correct statement of law, applicable under the facts of the case, and fairly covered in the instructions given. The trial court's human trafficking instructions as to the "taking and placing" and "force" modalities closely tracked the language of the statute and included all of the elements of the offenses.

At the time of trial, no pattern jury instructions were available for human trafficking. But subsequently, in 2017, the Maryland State Bar Association issued a pattern jury instruction for the offense of human trafficking by the "taking and placing" modality. Maryland State Bar Ass'n, Maryland Criminal Pattern Jury Instruction 4:17.15 at 719 (MSBA 2d ed. 2012, 2017 Supp.) ("MPJI-Cr").[5] The pattern jury instruction, like the

---

[5] MPJI-Cr 4:17.15 provides:
Prostitution – Taking or Placing (§11-303(a)(1)(i)-(ii))

30

instruction given by the trial judge, mirrors the language of CL § 11-303(a)(1)(ii), further indicating that the instruction given by trial judge was a correct statement of the law. *See Johnson v. State*, 223 Md. App. 128, 152, *cert. denied*, 445 Md. 6 (2015) ("it is well-established that a trial court is strongly encouraged to use the pattern jury instructions").

As to the third factor, the court instructed the jury on reasonable doubt as follows:

> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This means that the State has the burden of proving, beyond a reasonable doubt, each and every element of the crime charged. The elements of a crime are the component parts of the crime about which I will instruct you shortly. This burden remains on the State throughout the trial.

In *Carroll v. State,* 428 Md. 679 (2012), the Court of Appeals addressed the issue of whether a trial court must instruct the jury that the reasonable doubt standard must be applied to each element of each offense. *Id*. at 688. The Court determined that an instruction that the reasonable doubt standard must be applied to each element of each offense was not required, stating, "we are, in the end, not persuaded that an otherwise-correct reasonable doubt instruction is rendered constitutionally deficient by the omission of language that each element of the offense charged must be proven beyond a reasonable

---

The defendant is charged with the crime of Human Trafficking. In order to convict the defendant of the crime of human trafficking, the State must prove:
(1) that the defendant knowingly [took (<u>name</u>) to] [caused (<u>name</u>) to be taken to] [placed (<u>name</u>) in] a place; and
(2) that (<u>name</u>) was [taken to] [placed in] that place for prostitution.

"Prostitution means a sexual act, sexual contact, or vaginal intercourse for hire."

doubt." *Id*. at 692. In the context of the instructions at issue in *Carroll*, the Court explained:

> The detailed description of the concept of proof beyond a reasonable doubt set forth in that pattern instruction conveyed to the jurors that they must evaluate guilt based on that standard of proof. Then, in each of the separate instructions on the offenses charged, the court referred to the burden of proof when introducing the elements of each charged offense with the words "the State must prove" those elements. Read together, the reasonable doubt instruction (emphasizing the meaning and importance of that standard of proof) and the repeated message in every instruction that the State "must prove" the elements of each charged offense adequately imparted to the jury the mandate that the State must prove each element beyond a reasonable doubt.

*Id*. at 690. In the present case, as in *Carroll*, the trial court referred to the State's burden of proof prior to explaining the elements of each of the charges, by stating, "in order to convict [appellant] of [the crimes charged], the State must prove that [he]…[.]" We conclude in this case, as the Court did in *Carroll*, that the court's instructions, "read as a whole," sufficiently instructed the jury that the State was required to prove every element of the offenses beyond a reasonable doubt. *See id*. at 689 (quoting *Fleming v. State*, 373 Md. 426, 433 (2003)) ("[t]he 'instructions are reviewed in their entirety' and '[r]eversal is not required where the jury instructions, taken as a whole, sufficiently protect the defendant's rights … [.]'").

In the context of appellant's request that the court separately define the terms, "place," "harbor," "prostitution," and "knowingly," we discern no abuse of discretion in the trial court's determination that these terms required no further definition. When the meaning of a term is "implicit and clear," a trial court's decision of whether to define the term in an instruction is discretionary. *See White v. State*, 23 Md. App. 151, 164 (1974)

32

(holding no abuse of discretion in trial judge's rejection of defendant's proposed instructions on the jury's role as judge of law and fact, and the necessary absence of consent in a robbery); s*ee also In re Appeal No. 180*, 278 Md. 443, 450-51 (1976) (quoting *The People v. Rice*, 383 Ill. 584, 588 (1943)) ("The definitions of 'solicit' and 'prostitution' are so well and universally understood as to require no further definition in the statute or charge to set forth the elements necessary to constitute the offense intended to be punished."). We conclude that the trial court did not abuse its discretion in declining to provide appellant's proposed jury instructions and proposed defined terms.

In any event, even if the court erred by failing to give appellant's requested instructions, any error was harmless. *See Williams v. State*, 322 Md. 35, 47 (1991) (error in failing to give a requested jury instruction may be harmless). Appellant's admission that he "brought" S.S. to the hotel for his "reason," that he knew that she had engaged in prostitution while there, that he attempted to keep her from leaving the room, and that he had struck her in the face, coupled with the connection between his email address and her Backpage.com advertisement, substantiated that the jury's verdicts were strongly supported by the evidence. In our view, the trial court's failure to give the requested jury instructions did not affect the outcome of the case, and even if it was error not to give the instructions, it was harmless.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**